VANGSNESS, Respondent, v. BOVILL, Appellant.

(235 N. W. 601.)

(File No. 7044. Opinion filed March 23, 1931.)

Boyce, Warren & Fairbank, of Sioux Falls, for Appellant.

C. N. Jepson, of Sioux City, Iowa, and Thomas McInerny, of Elk Point, for Respondent.

CAMPBELL, J. On July 26, 1928, plainff and Fannie Bovill entered into a written contract whereby he agreed to sell and she agreed to buy certain realty in the city of Beresford. Mrs. Bovill paid $500 in cash at the time of the execution of the contract and agreed to pay the balance of the purchase price, amounting to $6,800 (or to pay part and give a certain mortgage for the remainder) on August 1, 1928, at which time the contract provided that plaintiff should furnish and deliver to Mrs. Bovill a good and sufficient warranty deed to the premises duly executed, and should also furnish abstract of title showing good and merchantable title to said property, and should deliver and assign to Mrs. Bovill the unexpired term of certain insurance in force on the premises. The contract contained no provision that time should be of essence thereof.

On August 1, 1928, Mrs. Bovill and one Frieberg, an attorney at Beresford who was acting as representative of plaintiff Vangsness, met at the Beresford State Bank. Frieberg brought to the bank a warranty deed executed by Vangsness and wife, the insurance policy on the premises, and an abstract of title. He inquired of Mrs. Bovill if she was ready to make the settlement under the contract, and she said she thought she was. Mr. Frieberg then handed to Mrs. Bovill the abstract of title and she handed it to Mr. Ontjes, the banker, and asked him to look it over. Mr. Ontjes said that he did not examine titles for himself and did not want to undertake to do so for her. Mr. Ontjes then inquired of Mr. Frieberg if he (Frieberg) thought the title was all right. Mr. Frieberg says that he replied, "I told him no one had retained me to examine the title. I had looked it through at the time it was in my posses-

sion and I presumed it was all right." Mr. Ontjes' testimony with reference to Frieberg's reply is as follows: "He says, well, there is a tax deed out. I says that being the case I would advise Mrs. Bovill to have an attorney to examine the title. She then told me to have Mr. Kaye (also an attorney practicing at Beresford) examine it." In any event Mr. Kaye was called in and requested to make an examination of the abstract in behalf of Mrs. Bovill. He appears to have raised some question concerning the abstract or the insufficiency thereof in certain particulars, and apparently some further information was then added or attached to the abstract and Mr. Kaye again examined it. Under date of August 8, 1928, Mr. Kaye rendered an opinion to Mrs. Bovill as follows:

"I have re-examined the title to the property above described as shown by the abstract thereof, after the proceedings of the foreclosure of the mortgage at entry number 2.

"I am unable to pass this title as merchantable. The suit to foreclose the mortgage was never decided upon its merits, but on a technical ground of the failure of the plaintiff to put up a cost bond, it was dismissed. Hence, there has never been any determination of the action on the merits. In addition, there is an outstanding tax deed which should be removed. This is set out in entry number 3.

"The title should be quieted. Martha Vaughn being a defendant, or if dead, her heirs at law. John La Plant should be an additional defendant, so that we may have a judicial determination of the fact that he never acquired an interest in the property."

Thereafter Mrs. Bovill submitted the abstract for further examination and opinion to Mr. Carlson, an attorney at law at Canton, who rendered an opinion stating in part and in material portions as follows:

"* * * 1. The title to this property was at one time in Fred J. Deane. From the abstract referred to, I find certain copies which may be copies of the proceedings in relation to his estate; but there is nothing in the certificate to the title nor in the abstract upon which you could hold the abstracter responsible for the correctness of those copies. These copies may as well not be on the abstract at all. No paper attached to the abstract is of any value or force unless it is identified by the abstracter as a part of the abstract and this is not done in this case.

"2. Assuming these copies to show the record of the probate proceedings, then the title is not merchantable because it appears from these copies that there was an inheritance tax of $324.45 assessed against this estate. The only evidence of payment of any tax is an affidavit signed by the administratrix. This affidavit is of no value and does not prove payment under any circumstances; moreover, it does not purport to show payment of inheritance tax, and even if it did, that is not the way. to show the payment of such tax.

"3. The Petition for Final Distribution alleges the payment of all debts and the payment of inheritance tax; such statement in the petition is not conclusive on either of these points and the decree of distribution fails to find that the debts have been paid. Hence the title is defective on this account.

"4. A more serious and difficult question arises from the tax deed shown at Entry No. 3 of the abstract. The abstracter states that this deed was dated March 30th, 1885; but in his remarks he states, 'sold for taxes of 1889.' Clearly one of these two dates is wrong. Assuming the latter date to be correct, the title would be clouded by this tax deed because the natural inference would be that this deed was based upon the taxes levied against the land while it was subject to taxes under the entry made by the subsequent patentee, Rasmus Pederson. Hence as long as the abstract stands in the condition in which it now is, the title is clouded by that tax deed.

"5. An amendment to the abstract may show that the tax deed was based upon an invalid tax; but the examiner cannot indulge a presumption to that extent in the face of the record. The abstract shows that one John LaPlant made an entry upon this land receiving a receiver's receipt on July 23rd, 1880. Under 'Remarks' the abstracter states that this entry was contested by Rasmus Pederson and was finally cancelled March 23rd, 1886. This is hardly the way to abstract proceedings relating to contests, and in this instance, on account of this tax deed, such proceedings are essential and should appear on the abstract in detail.

"Under the abstract as it stands, I am not able to say whether the tax deed conveyed any title; whether it did or did not depends upon whether the taxes, upon which this deed is based, were legally levied.

"Clearly this land was what is known as 'Public Land.' Such lands are not liable to taxation until entry thereon has been made and full payment to the United States has been made. In the case of a homestead entry, the land is not liable to taxation until the settler becomes entitled to a patent, so that if this tax was levied against the land under the entry made to John LaPlant and if that entry was cancelled before LaPlant had the equitable title, then the tax levied was illegal and the tax deed would be illegal. But an attorney cannot pass upon facts which are not disclosed.

"For the reasons above given, the conclusion must be that the tax deed is a cloud upon the title.

"This does not mean that the title of the present owner could be defeated; it means that this tax deed raises a question as to the title of the present owner, which question must be answered by record facts and not by things generally known to be facts. * * *

"As above stated, the question of whether this title is merchantable depends on extraneous facts which do not appear from the abstract.

"Of course, if the abstract was amended so as to show that the State had no right to levy the taxes referred to and upon which that tax deed was issued, then it would be clear that the tax deed conveyed no title. But in the present condition of the abstract, the conclusion is forced that this tax deed, old as it is, is a cloud upon the title. * * *"

The opinions of these two examiners, or copies thereof, were promptly submitted to plaintiff. Plaintiff appears to have made no effort to meet the objections raised, but on August 21, 1928, commenced the present action for specific performance of the purchase contract. Findings, conclusions, and judgment were in favor of plaintiff. Mrs. Bovill, the defendant, gave notice of intention to move for new trial, and on July 8, 1929, served and filed written notice and motion for new trial, which motion was, by stipulation of the parties, brought on for hearing on August 9, 1929, before Honorable Ray E. Dougherty, judge of the circuit court, and thereafter, and on October 4, 1929, Judge Dougherty made and entered an order granting said application for new trial. Between July 8, 1929, when the notice of motion for new trial was given, and August 9, 1929, when said motion was submitted to the court, Mrs. Bovill, unknown to her attorneys, had died. Thereafter, and on

November 5, 1929, plaintiff's attorneys moved to vacate and set aside the order of October 4, 1929, granting a new trial, and the present defendant Robert Bovill, having meantime qualified as executor of Fannie Bovill, made application to be substituted as a party defendant in the action. Both motions were granted. Thereafter plaintiff's attorneys filed an affidavit of prejudice against Judge Dougherty, who had granted a new trial on October 4, 1929, as aforesaid, and by order of the presiding judge of the Supreme Court, pursuant to statute, Hon. L. L. Fleeger was designated to act in place of Judge Dougherty in further proceedings in the matter, and thereafter the application of defendant for a new trial was again submitted and argued, this time to Judge Fleeger, and an order was made by Judge Fleeger denying the application for a new trial. From the judgment and from the denial of his application for a new trial, defendant executor has now appealed.

The situation upon the present appeal is adequately stated by appellant in his brief in the following language: "The whole controversy revolves around the legal questions as to whether or not the abstract was a sufficient abstract of title and whether the title disclosed thereby ·is merchantable, within the provisions of the contract."

██ The obligation of respondent under the contract between the parties is quite clear. He contracted to convey by warranty deed "good and merchantable title" to the premises and also to "furnish abstract of title showing good and merchantable title." Appellant was entitled, before being compellable to proceed with the purchase, to receive an abstract of title duly certified and in proper form by a bonded abstracter duly qualified under the laws of the state of South Dakota (at that time sections 10541-10547, R. C. 1919) showing and properly abstracting all material and relevant record facts necessary to enable an examiner of titles, assuming the correctness of the abstract, to say from an examination of the abstract and nothing else whether or not respondent did in fact have such good and merchantable title. Whether or not appellant might have been required to accept an abstract made and certified by the register of deeds and the county treasurer, pursuant to sections 5922 and 5934, R. C. 1919·(which had not then been repealed), is not an issue in this case, no such abstract having been offered, and we do not undertake to pass thereon.

234

■ Appellant raises numerous objections to the form and manner of authentication and certification of the abstract and to the title of respondent as disclosed by the abstract. We think the rule is, however, that any remediable defects in the abstract or in the title as disclosed by the abstract, which might have been, but were not, urged by the purchaser against the sufficiency of the vendor's title, are waived by the purchaser at least to the extent that they are no longer a ground for rescission by the purchaser or a defense for the purchaser to the vendor's action for specific performance. The general rule is well stated in 27 R. C. L. p. 513. See, also, Pfister v. Sime, 48 S. D. 131, 202 N. W. 476. It follows, therefore, that many of the matters urged in appellant's brief are not entitled to attention or consideration upon this appeal, and the substantial question is whether or not the objections set forth in the examiners' opinions above quoted are sufficient to constitute a defense.

■ It may also be noted at this point that upon the making of such objections respondent was entitled to a reasonable opportunity to remedy the defects so pointed out, if possible, if they were in fact defects. In the instant case, however, respondent made no effort to meet said objections, but elected to maintain the position that such objections were not valid, that the claimed defects were not in fact defects, and instituted this action to compel appellant to accept and pay for the title disclosed by the abstract furnished and upon the abstract furnished.

The defects claimed in the objections of the examiners are, in substance, three. First, an insufficient abstracting of the probate proceedings in relation to the estate of Fred J. Deane; second, an outstanding mortgage, unsatisfied of record, to one Martha Vaughn, shown at No. 2 of the abstract; third, an outstanding tax deed to Martha Vaughn, shown at No. 3 of the abstract.

■ ■ We will consider first the objections to the sufficiency of the abstracting of the proceedings in the Fred J. Deane estate, to which objection was made in the opinion of Mr. Carlson, hereinbefore set out. At entry No. 26 of the abstract there is shown the record of a certified copy of the final decree of distribution of the county court of Union county, S. D., in the matter of the estate of Fred J. Deane, purporting to decree title to the premises in question in Florence M. Deane. No mention is made at entry No. 26

by way of reference to exhibits attached to the abstract or any-thing of that sort, nor were there other entries on the abstract involving the probate of the Deane estate. With or attached to the abstract were certain sheets apparently relating to proceedings of the probate court in connection with the Deane estate, but not cer-tified to, identified, or authenticated in any manner by any one, and not referred to in the abstract. We think Mr. Carlson was correct when he said in his opinion: "These copies may as well not be on the abstract at all. No paper attached to the abstract is of any value or force unless it is identified by the abstracter as a part of the abstract." The function of an abstract is well stated in Atte-bery v. Blair, 244 Ill. 363, 91 N. E. 475, 478, 135 Am. St. Rep. 342, as follows: "An abstract of title is, in a legal sense, a summary or epitome of the facts relied on as evidence of title, and it must contain a note of all conveyances, transfers, or other facts relied on as evidences of the claimant's title, together with all such facts appearing of record as may impair the title. Heinsen v. Lamb, 117 Ill. 549, 7 N. E. 75. It should contain a full summary of all grants, conveyances, wills, and all records and judicial proceedings whereby the title is in any way affected, and all incumbrances and liens of record, and show whether they have been released or not."

When title to realty passes by descent or devise, the probate proceedings necessarily enter into the title, and the probate pro-ceedings should be sufficiently abstracted (at least where they occur in the same jurisdiction) either by entries upon the abstract or by exhibits thereto attached and referred to in the abstract and duly authenticated to enable the examiner, without going outside the abstract and attached authenticated exhibits, to determine the valid-ity of the probate proceedings in so far as the title to the realty may be affected. The abstract should thus show the existence of jurisdictional facts, the proper determination of heirship, the cutting off of rights of creditors, etc. See Thompson, Title to Real Prop-erty, §§ 5, 494. Warvelle on Abstracts (4th Ed.) §§ 34, 594. This is not accomplished by attaching to the abstracts uncertified, un-identified, and unauthenticated sheets of paper in no manner re-ferred to in the abstract itself. The ease with which this objection could have been obviated renders less excusable the attempt of re-spondent to force the abstract and the title thereby disclosed upon the purchaser without any effort to meet the objection.

We turn now to consider objections with reference to the mortgage and tax deed outstanding in the name of Martha Vaughn.

Entry No. 1 of the abstract is a receiver's receipt issued by the United States to John La Plant, dated July 23, 1880, filed for record August 9, 1880. This entry is accompanied by the following "remark" of the abstracter: "Entry contested by priority of right of Rasmus Pederson, and finally cancelled by the Commissioner of Gen. Land office, Mar. 23, 1886, Hughes East Receiver."

Entry No. 2 of the abstract shows a mortgage from John La-Plant, single, to Martha Vaughn, dated August 9, 1880, filed for record August 13, 1880, and this entry is accompanied by the following "remark": "Action brought to foreclose this mortg. Mar. 12, 1891. Action dismissed Sep. 1, 1892. E. G. Smith Judge, Dist. Ct. Union County, S. D."

Entry No. 3 of the abstract shows a tax deed from the treasurer of Union county, Dakota Territory, to Martha Vaughn, dated March 30, 1885, filed for record March 30, 1885, and this entry is accompanied by a "remark" of the abstracter as follows: "Sold for Tax of 1889 to D. P. Walworth, Cert. of sale issued to Martha Vaughn. Ack. J. H. Ryan, Reg. of Deeds, Union Co. D. T. Seal."

Entry No. 4 of the abstract shows a patent from the United States to Rasmus Pederson, dated May 7, 1888, filed for record August 8, 1888, and it is through the Pederson patent that the title of respondent is deraigned. Attached to the abstract and certified by the abstracter were copies of the files of the district court of Union county in the action brought to foreclose the Vaughn mortgage referred to in entry No. 2 of the abstract, whence it appears that Martha Vaughn instituted an action to foreclose the mortgage in which Rasmus Pederson and others were made defendants and answered; that an order was made requiring the plaintiff Vaughn (she being then a nonresident) to give security for costs; and that the action was dismissed because of failure to furnish such security for costs and was not in any manner disposed of upon the merits.

██ There is no question but that entry No. 2 shows an outstanding mortgage in Martha Vaughn. As to this mortgage it is the position of respondent that it was given by the original entryman La Plant, and that all rights of La Plant and of his mortgagee were entirely cut off by the contest of La Plant's right by Pederson (indicated by the remark under entry No. 1 of the abstract) and

by the subsequent issue of patent to Pederson shown at No. 4 of the abstract. The remark under entry No. 1 of the abstract is the only showing as to any contest between La Plant and Pederson. La Plant had a mortgageable interest in the premises at the time he gave the mortgage, subject, perhaps, to be thereafter defeated, and, the mortgage being of record, although prior to patent, was constructive notice to Pederson. Adam v. McClintock, 21 N. D. 483, 131 N. W. 394; Bernardy v. Colonial & U. S. Mortgage Co., 17 S. D. 637, 98 N. W. 166, 106 Am. St. Rep. 791. It is not possible from this record to say whether the ultimate issuance of the patent to Pederson was entirely adverse to all rights and interests of La Plant, or whether it was the result of some compromise or agreement between La Plant and Pederson, in which event, La Plant having actual and Pederson constructive notice of the Vaughn mortgage, all rights thereunder would not necessarily be cut off by the issuance of the patent to Pederson. Assuming, however, that the rights of Pederson finally culminating in issuance of patent to him, as shown at entry No. 4, were in every respect and at all times adverse to the interests and rights of La Plant, and that the issuance of patent to Pederson cut off all rights of La Plant and of his mortgagee, it then becomes necessary to consider the tax deed to Vaughn shown at entry No. 3 of the abstract. There is a palpable error in this entry, since it shows that the deed was dated, acknowledged, and filed for record March 30, 1885, whereas in the column headed "remarks" it is indicated that the deed issued pursuant to sale for the taxes of 1889.

Respondent suggests that Martha Vaughn, being the mortgagee under a mortgage authorizing her to pay taxes and add the amount thereof to her lien, could not acquire tax title to the premises, and cites First National Bank v. McCarthy, 18 S. D. 218, 100 N. W. 14, 18. The litigation in the McCarthy Case was between mortgagor and mortgagee, and the holding of this case on this point is stated in the following language: "* * * Where the mortgagee has merely a lien on the mortgaged property, that, so long as the relation of mortgagor and mortgagee exists, the latter cannot, as against the former, acquire title to the property by means of a tax sale, where, under the terms of the mortgage, he is permitted to pay the taxes assessed against the land, and add the amount so paid to his claim. * * *" In the instant case it may be

true that Vaughn could not acquire a valid tax title as against her mortgagor La Plant, but, if the right of La Plant in the land was destroyed by recognition of the adverse right of Pederson, and the Vaughn mortgage fell with the right of La Plant, certainly there would be nothing about the existence of that mortgage which would prevent Vaughn from acquiring a tax title good as against Pederson, and in fact good as against any one excepting La Plant and those claiming through or under him.

 If the interest of Pederson in the premises resulting in the issuance of patent to him as shown at entry No. 4 of the abstract was at all times distinct and independent from and adverse to any interest of La Plant, then it must have been founded upon an entry by Pederson, compliance by him with the requirements of the Homestead Entry Law, and final proof of his performance of such requirements to the satisfaction of the land office. When any of these events took place, the abstract fails to indicate. It does not show when Pederson made entry upon the land, nor does it show when, in fact, he completed the residence, cultivation, etc., required by the Homestead Law, nor when he made final proof of his compliance with said law. When Pederson had completed the performance of the acts required by the Homestead Law he became the equitable owner of the premises, notwithstanding the fact that legal title still remained in the United States, and the land was subject to taxation by the state, either at that time (Bellinger v. White, 5 Neb. 399) or at least when he made final proof. See Danforth v. McCook County, 11 S. D. 258, 76 N. W. 940, 74 Am. St. Rep. 808; United States v. Detroit Timber & Lbr. Co., 200 U. S. 321, 26 S. Ct. 282, 50 L. Ed. 499; Doran v. Kennedy, 237 U. S. 362, 35 S. Ct. 615, 59 L. Ed. 996; Irwin v. Wright, 258 U. S. 219, 42 S. Ct. 293, 66 L. Ed. 573. There is nothing appearing upon the abstract in question from which it may be determined that the tax deed to Vaughn, shown at entry No. 3 of the abstract, is or was in any respect invalid.

The question of what constitutes good and merchantable title to real property has several times been considered and discussed by this court. See Tripp v. Sieler, 38 S. D. 321, 161 N. W. 337; Larson v. Thomas, 51 S. D. 564, 215 N. W. 927, 57 A. L. R. 1246, and monographic note following said case in 57 A. L. R. beginning at page 1253.

In the instant case it seems plain that the proceedings of the county court in connection with the probate of the Deane estate were not sufficiently abstracted to make it possible for an examiner to determine the validity thereof. It further appears that the abstract upon its face shows serious questions in connection with the Vaughn mortgage and tax deed which were bound to be raised by any careful examiner to whom the abstract was submitted. Under all the facts and circumstances of this case, we believe respondent has failed to established performance of the obligation of his contract to "furnish abstract of title showing good and merchantable title to said property. We think that respondent is not entitled to specific performance, and that appellant should have had judgment upon her counterclaim for the return of the $500 paid upon the purchase price at the time of the execution of the contract.

The judgment and order appealed from are therefore reversed.

POLLEY, P. J., and ROBERTS and WARREN, JJ., concur.