**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BERESFORD, SOUTH DAKOTA, Appellee,**

v.

**AETNA INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.**

**No. 19974.**

United States Court of Appeals, Eighth Circuit.

Aug. 7, 1970.

Robert C. Heege, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellant, and filed brief.

T. R. Johnson, of Danforth, Danforth & Johnson, Sioux Falls, S. D., for appellee, and filed brief; G. J. Danforth, Jr., Sioux Falls, S. D., was on the brief with Mr. Johnson.

Before MATTHES, Chief Judge, and JOHNSEN, Senior Circuit Judge, and LAY, Circuit Judge.

JOHNSEN, Senior Circuit Judge.

Aetna Insurance Company has appealed from a judgment against it of $19,-802.22 and interest, in a diversity suit brought by First Federal Savings & Loan Association of Beresford, South Dakota, upon a "Savings and Loan Blanket Bond".

The suit and the judgment were predicated upon provision (D) of the "Insuring Agreements" of the bond, by which Aetna had obligated itself to indemnify First Federal for "Any loss through forgery or alteration of, on, or in any instrument".

The loss involved was one occurring on a mortgage loan made to a developer named Point (and his wife) upon a lot in an Addition to the City of Sioux Falls, South Dakota, which Point had platted. As incidents in obtaining the loan, Point forged a mechanic's lien waiver and altered a copy of the recorded plat set out in the abstract of title. Each of these documents had been required to be furnished to First Federal as an element of reliance in its loan processes and for retention by it as part of its loan file.

Point's application gave the legal description of the property to be mortgaged as "Lot 2, Block 1" of the platted Addition. The application went on to state, and Point also so represented in his oral negotiations, that the lot contained a house which had just been constructed, and that the loan was desired for the purpose of paying off the contractor. The house thus referred to was, however, not located on Lot 2, but upon adjoining Lot 3, with Lot 2 being merely a vacant lot, and with discovery of this fact not being made by First Federal until after Point had become insolvent and defaulted on the loan.

Beyond describing the size and structure of the house, the application, in further deceptive purpose, set out its correct street address (208 East 35th St., Sioux Falls, S.D.), which identification would normally be used for making inspection and appraisal of the property listed in an application rather than the plat description. Indeed, to insure apparently that this would occur, Point accompanied the Beresford officials to the Sioux Falls house.

Because of the recentness indicated as to the construction, the furnishing of a mechanic's lien waiver was, as noted, one of the conditions required as a basis for reliance in the making of the loan. Point prepared such a purported waiver and forged the signature of the building contractor thereto. The house was falsely stated in the body of the instrument to be located on "Lot 2, Block 1" of the platted Addition, and the caption of the instrument was lullingly used to disguise the falsehood by setting out the

correct street address of the house as "Re: Property at 208 East 35th St., Sioux Falls, S.D.".

As to the abstract of title, the furnishing of this document was also, as previously indicated, one of the requirements made and bases relied on by First Federal in the making of the loan. One of the parts of the abstract, as prepared by the abstracter, consisted of a certified copy of the recorded plat showing the numbers and positions of the lots in relation to each other. To prevent disclosure from occurring, on examination of the abstract, of the falsehoods in which Point had engaged as to the lots, he made alteration of the copy of the plat by changing the number of Lot 3 thereon to Lot 2 and that of Lot 2 to Lot 3.

Aetna urges three contentions here, as it did in the trial court. It contends (1) that the changing of the lot numbers on the plat in the abstract could not give rise to a "loss through * * * alteration of * * * any instrument" within Insuring Agreement (D), because an abstract of title cannot be held to constitute an "instrument"; (2) that the forging of the contractor's signature to the lien waiver also could not give rise to a loss under Insuring Agreement (D), because the contractor never had or claimed any lien rights against Lot 2, and the furnishing of a waiver as to this lot would therefore represent a mere formality in the situation, in that even if the lien waiver had been genuine, First Federal's loss would still have occurred, and the forging of the waiver thus could not constitute a proximate factor in relation to it; and (3) that with Insuring Agreement (D) thus being, in both of these respects, inapplicable to the loss, the situation necessarily was one coming within the provision of the "Exclusions" in the bond as to "any loss the result of a complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or dishonesty, except when covered by Insuring Agreement * * * (D)".

Taking up these contentions in inverse order—it will be noted as to (3) that the quoted exclusion provision expressly excepts from its application a loss "covered by Insuring Agreement * * * (D)"—as indeed, on the coverage language, would in any event legally be the case, even without any such expression of exception. Aetna's argument as to the exclusion provision being controlling in the situation is thus devoid of any basis and entitled to no discussion, if the forgery of the mechanic's lien waiver and the alteration of the plat in the abstract, or either of them, can properly be regarded as presenting a situation of coverage under Insuring Agreement (D).

As to its contention (2), Aetna concedes that the forging of the waiver was a forgery of an "instrument". It argues, however, as indicated, that the lien waiver was without any possible relationship to the loss, in that this was a consequence solely of the house not being located on Lot 2; that the waiver, whether forged or genuine, did not have the capacity to affect this physical fact; that the forgery of the instrument thus did not constitute a proximate factor in the loss; and that the situation therefore could not be one of coverage under Insuring Agreement (D) for "loss through forgery * * * of * * * any instrument".

This is artificial reasoning and concept. It brushes aside the established principles of proximateness as to deceit losses. Under these, on the part played by Point's misrepresentation, including the falsities involved in the lien waiver, First Federal's loss would be legally regarded as having been occasioned by the difference in factual situation between what its loan security actually was and what such security would have been if the fraudulent representations of Point had been true. Within this frame of proximate concept, each of Point's mis-

representations which had had a material influence upon First Federal's action, or in other words had constituted a substantial factor in its making of the loan, would constitute a proximate cause of the resulting loss. See generally Prosser, Law of Torts, 3rd Ed., § 103 at p. 730.

On the evidence in the record, the trial court was entitled to find, as was the effect of its memorandum decision, that the forging of the lien waiver had been utilized as a means for inducing First Federal to believe the facts to be as set forth in the application, and that the forged instrument had constituted such an element of reliance that without it the loan would not have been made. Manifestly, except for the forgery, Point would not have been in a position to furnish the lien waiver as a means of representation and an element of reliance. We thus are unable to see any question as to the correctness of the trial court's holding that the forgery had been such a proximate factor in causing the loss that the situation constituted one of coverage under Insuring Agreement (D) for "Any loss through forgery * * * of * * * any instrument." There is no need to deal further with Aetna's contention (2).

■ As to Aetna's contention (1), we know of no rule of law that requires the general holding that an abstract of title can never be regarded as constituting an "instrument", no matter what contextual significance and proximate relationship it may have in a transactional situation.

Aetna would have us read such a legal implication into the general definition of an abstract of title and what its contents should consist of, as stated by the Supreme Court of South Dakota in Vangsness v. Bovill, 58 S.D. 228, 235 N. W. 601, 603, 604 (1931). All that that case involved and all that its definition of an abstract had relation to was the question of whether a vendor, who was seeking specific performance, had performed his obligation under the contract to furnish the vendee with a legal abstract of title. Making indication for that purpose of what a legal abstract of title should contain, the court held that the vendor had failed in the situation involved to furnish such an abstract, and that he therefore was not entitled to specific-performance relief.

How this general definition and the application of it to the question of the legal sufficiency of some abstract of title as such can be argued to carry an implication that no abstract of title can ever legally be characterized as or have the status of an "instrument" no matter what contextual relationship and significance it may have as a transactional element is, we confess, beyond our powers of rationalization and interpretation. Also, we are without judicial doubt that the South Dakota Supreme Court would not so regard or interpret its *Vangsness* expression. If the instant case were before that court instead of us, we do not believe that it would declare its *Vangsness* definition to present a conceptual obstacle to a holding by it that the abstract here, in its character as a loan-making element and in its significance as a loss-producing factor, had been such a paper or document as in its transactional context to have constituted an "instrument" within the language of coverage in Aetna's "blanket" bond as to "Any loss through * * * alteration of * * * any instrument".

Aetna's brief has set out some other citations, but none of these cases any more supports its contention, either directly or implicationally, than the *Vangsness* case. In attempted further search, we have run across the case of Waters v. Pearson, 163 Iowa 391, 144 N.W. 1026 (1914), where an abstract of title was held in the context of the situation there involved not to come within the term "instrument" as used in an Iowa statute, Code § 3063, providing: "The person to whom a tender is made must, at the time, make any objection which he may have to the money, *instrument* or property tendered, or he will be deemed to have waived it". (Emphasis ours.)

That case was a suit by a vendee to recover the earnest-money payments which he had made, because of the failure of the vendor to perform or to have tendered performance of the contract in accordance with its terms. The vendor had made a purported tender of performance on the evening of the date prescribed by the contract for conveyance by him. The abstract of title which he tendered with a deed had not, however, been brought down to date and did not show title to be vested in him. One of the defenses urged against the suit was that the vendee could not rely upon the deficiency of the abstract as a claim of insufficient tender, in that under the statute the abstract would constitute a tendered "instrument" and that "he made no objection to the abstract, and that his right of objection was thereby waived".

In rejecting this contention as to the situation, the court said (144 N.W. at 1032):

"We do not think that an abstract of title should be construed as an 'instrument' within the meaning of this statute. To say that a nonprofessional man should be required to make specific objections instanter to an abstract of title upon presentation would be so manifestly unreasonable that such a construction ought not to be put upon the statute, unless clearly required by its express terms."

But this interpretation of the application of the term "instrument" in its use in the particular statute involved can hardly be regarded as either holding or implying that the word "instrument" can never legally have application to an abstract of title and that an abstract of title can therefore never in any context constitute an "instrument". The effect of the court's expression plainly seems to us to be to the contrary—that the term "instrument" is without any absolute legal meaning, and that, in the use made of it in a statute or contract, the question of its application to a particular paper or document ordinarily is a matter of such paper's or document's aspect of relationship and significance as an element in the situation involved.

There are also expressions in varying situations where a court has itself engaged in using the term "instrument" in such a contextual connotation. For example, in City of Atlanta v. Texas & P. Ry. Co., 56 Tex.Civ.App. 226, 120 S.W. 923, 926 (1909), it was held that a plat which had been filed by a railroad in indication of the relationship of its right-of-way to the use of a street was "a written instrument, and its construction is for the court, unless there is an ambiguity which renders it necessary to resort to circumstances attending its making in order to arrive at the real intent of the parties".

To what we have precedingly said we shall only take occasion to add concludingly that without the existence of some absolute legal meaning of the term "instrument"—which Aetna has not been able to demonstrate and which we have been unable to find—the use of that general term in the coverage provision of the bond does not present any such question as to its application to the abstract of title here as to remove the situation from the settled principle of insurance-policy interpretation of not according words of coverage any unnecessary limitation in favor of the insurer, but of allowing them to have their full reasonable content in favor of the insured.

We hold, as has been indicated, that the lien waiver and the abstract of title each constituted an "instrument" in the situation within the coverage provision of Insuring Agreement (D), and that the forgery and alteration which had been engaged in as to them respectively had each been such a proximate factor in occasioning the loss as separately, as well as combinationally, to give rise to a liability upon the blanket bond. While the trial court thus properly regarded the forged lien waiver as constituting a sufficient basis for its judgment, and so apparently deemed it unnecessary to reach the question of the alteration of the abstract, both Aetna and First Federal have chosen to carry that question

into the appeal. Aetna has urged it as one of its bases for reversal of the judgment, and First Federal has argued it as an additional ground for use by us to sustain the judgment. We have in this situation chosen to deal with the question and make disposition of it upon its merits.

Affirmed.