STOEFEN, et al, Respondents, v. BROOKS, et al, Appellants

(287 N. W. 330.)

(File No. 8251.   Opinion filed August 16, 1939.)

588

*Parliman & Parliman,* of Sioux Falls, for Appellants.
*Krause & Van Buren,* of Dell Rapids, for Respondents.

ROBERTS, J.  Plaintiffs brought this action to recover damages alleged to have been sustained by a breach of warranty.  The jury returned a verdict for the plaintiffs on which judgment was rendered.  From the judgment and order denying motion for new trial, the defendants have appealed.

Plaintiffs allege that defendants David A. Brooks and Daniel F. Brooks, composing a partnership under the firm name of Brooks Bros. Farm Machinery Co., maintain a place of business in the city of Sioux Falls; that on August 28, 1937, the defendants sold to plaintiffs a Massey-Harris Model 25 Power Unit; that the defendants warranted that the engine was capable of developing power equal to that of a similar type manufactured by the International Harvester Company; that the engine wholly failed to fulfill the guaranty made by the defendants and on the faith of which it was purchased; and that plaintiffs offered to return the engine purchased and demanded a return of the purchase price, which was refused.

In the answer to the complaint defendants allege that they as agents for the Massey-Harris Co., sold the engine to the plaintiffs; that a written agreement set out in the answer was entered into between their principal and the plaintiffs; and that the engine fulfilled the warranties made by the seller in such contract.

On the trial it was shown that defendants maintained a place of business in Sioux Falls and sold farm implements manufactured by the Massey-Harris Co.; that on August 19, 1937, plaintiffs entered into negotiations with defendants and A. J. Hawkinson for the purchase of a hammer mill and power unit.  The evidence in the case is undisputed that Hawkinson was an employee of the Massey-Harris Co., to make sales of its machinery.  A hammer

mill without a power unit was on display in the place of business of the defendants and plaintiffs were informed that a hammer mill of this type was owned by a farmer residing near Lismore, Minnesota. The next day plaintiffs and Hawkinson went to the farm near Lismore to see the hammer mill in operation. It was driven by an International six cylinder engine and Hawkinson admitted that he informed the plaintiffs that the "Massey-Harris outfit including the power unit would do as good work as the outfit they saw operating over in Minnesota." Plaintiffs upon their return from Lismore signed an order which is in the handwriting of Hawkinson and reads in part as follows: "Please order us a Power Unit and Hammer Mill * * *. Total Price $1013.00 * * * Plus Tax." Hawkinson delivered the order and a check which was given for a part of the purchase price to the defendants.

It appears from the evidence that on August 28, 1937, after delivery of the hammer mill and power unit, plaintiffs went to the place of business of the defendants to make settlement. A note in part payment was given by the plaintiffs, payable to Brooks Bros. Farm Machinery Co. The note recites that title to the property described therein shall remain in the seller until the purchase price is fully paid. It further appears from the evidence that plaintiffs signed an order, dated August 28, 1937, and addressed to the Massey-Harris Co., which contains the following:

"Please deliver to me (or us) through your undersigned Dealer, on or about ................ 193.., or as soon thereafter as possible, the following goods, which I (or we) purchase subject to the conditions, terms and warranties stated herein and for which I (or we) agree to settle in full upon delivery as hereinafter stated:

"1 Model 25 Power Unit, 1 No. 31 Hammer Mill and Wagon Loader * * *.

"It is expressly agreed and understood that the title, ownership and right of possession to all goods delivered on this order are to remain in The Massey-Harris Co. and goods are to be held at all times by the purchaser subject to the order of said Company until fully paid for in money. If notes are taken as provided in this contract, the same shall not be considered as payments, but simply as evidence of the indebtedness. * * *

"It is further agreed and understood by parties hereto, that this Contract contains the entire agreement between said parties and that no verbal agreements have any application thereto.

"* * * All machines, offered by The Massey-Harris Co., are warranted to be well made of good material and to do good work when properly set up and operated. * * *"

Plaintiffs testified that defendants prior to the signing of this order stated that "the Massey-Harris Power-Unit would equal or surpass the International Power-Unit" and that "they would guarantee it and stand back of it." As to the signing of this instrument Elmer Stoefen testified: "Brooks Brothers never told us they were merely agents for the Massey-Harris Co. Hawkinson did not tell us that he was representing that company. Brooks Brothers asked us to sign a purchase slip at the time of settlement. We didn't read it. The reason they stated for signing was that they would have this to show that we purchased a Power-Unit and Hammer Mill from them."

It is contended by the defendants that the evidence wholly fails to establish liability; that they acted only as agents for the Massey-Harris Co. and did not contract for themselves. It is elementary that if a contract is made with an agent acting within the scope of his authority for a disclosed principal, the agent does not become a party to the contract, unless otherwise agreed. 3 C. J. S., Agency, § 215, p. 119. The order of August 28th is signed by the plaintiffs as purchasers and the Massey-Harris Co. is designated as the seller. The order in question, when accepted, became a contract in writing between the plaintiffs and the Massey-Harris Co. The evidence is without conflict that defendants had authority to contract for the seller named in the contract. True, there is evidence that plaintiffs did not read the order before signing it. But it is not claimed that they had no opportunity to do so or that fraud was practiced upon them to prevent them from reading the order. From the case of Reed v. Coughran et al., 21 S. D. 257, 111 N. W. 559, 560, we quote: "It was clearly incompetent to allow plaintiff to destroy the effect of the written contract by disputing its terms, and not the slightest legal excuse was offered to justify his failure to read the instrument before affixing his signature thereto. Where, as in this case, a party has the ability and opportunity to read such a contract before signing the same, and

no fraud is practiced upon him by the other party, he is estopped by his own negligence from thus questioning its validity."

There can be no question about the correctness of the legal principle stated in the brief of the defendants that parol testimony is inadmissible to vary, contradict or add to a contract which has been reduced to writing which is clear, definite and complete, and that in the absence of fraud, mistake or accident, it will be presumed that the written agreement expresses the final intention of the parties upon the subject matter of he contract. SDC 10.0604; Farmers' Elevator Company of Colton v. Swier et al., 50 S. D. 436, 210 N. W. 671; Clark Implement Co. v. Priebe, 52 S. D. 606, 219 N. W. 475. Plaintiffs insist, however, that the oral evidence was admissible to establish an agreement collateral to the written contract, and have cited cases where an agent selling his principal's goods personally warranted the same to induce the purchaser to sign a written order to the manufacturer. In such case there are separate and distinct agreements. This principle can have no bearing in the instant case. This was not the basis of the cause of action and was not the theory upon which the case was submitted to the jury. The sufficiency of the evidence to sustain the verdict must be determined in accordance with instructions given the jury; this court cannot sustain a verdict upon an issue never suggested or considered by the court and jury. See Robertson v. Hall, 62 S. D. 599, 255 N. W. 803, and cases cited. The trial court instructed the jury, so far as material to this appeal:

"If you find that the sale of said power unit and Hammermill was made by the Massey-Harris Company, and not by the defendants, you need consider this case no further, but return a verdict for the defendants.

"If you find that the sale of said power unit and Hammermill was made by the defendants, then the next question for you to determine is whether or not defendants guaranteed and warranted the power unit to develop as much power and work as well and with the full capacity as the WPA 50 International power unit shown to the plaintiffs."

There was no evidence from which the jury could find that the sale was made by the defendants.

The judgment and order appealed from are reversed.

All the Judges concur.