KENDALL v. HASTINGS.

No. 33209.   Oct. 26, 1948.

*198 P. 2d 998.*

A. Lee Battenfield and Harve N. Langley, both of Pryor, for plaintiff in error.

R. A. Wilkerson, of Pryor, for defendant in error.

LUTTRELL, J. Plaintiff, Chas. Hastings, brought this action against defendant, C. L. Kendall, to recover the balance due on a contract for the sale of 160 acres of land in Mayes county, and to establish and enforce a vendor's lien on the property for the amount

due. The case was tried to the court as one of equitable cognizance, and judgment rendered for the plaintiff for the balance due with interest at the rate of 6 per cent, an attorney's fee of $50, and costs. The trial court gave plaintiff a lien upon the property for the amount of the judgment, and decreed the sale thereof to satisfy the judgment unless it was paid within 30 days. Defendant appeals.

The facts are practically undisputed. Plaintiff claimed to be the owner of the land in controversy, and on December 24, 1943, entered into a written contract for the sale of said property to the defendant. The contract provided that

" . . . the grantor herein agrees to convey good and merchantable title to said property to grantee, free from mortgages, judgments, lien, taxes for the year 1943, and prior years, and grantor agrees within thirty days herefrom to deliver abstract of title certified down to date under one certificate, and the grantee to have a reasonable time within which to examine the said abstract of title, and if title objections be found the grantor to have reasonable time at his own expense to correct the title, provided, the grantor shall not be required to recertify or cause to be recertified the abstract of title to include the correction instruments or proceedings for correction of the title. Possession of property to be delivered to grantee upon the delivery of this contract."

The contract provided that a warranty deed executed on the same date should be placed in escrow in the American National Bank of Pryor Creek, Okla., to be delivered to the grantee upon full payment of the balance of the purchase price. The contract price was $2,800, $500 of which was paid when the contract was executed, $900 was by the contract made payable to the bank on or before October 1, 1944, and the balance of $1,400 on or before October 1, 1945, with interest at the rate of 6 per cent per annum, which sums were

" . . . to be paid to said bank for the credit of the grantor, and the grantor hereby constitutes the said bank his agent for the receipt of said balance purchase money with interest, and delivery of said deed."

Within 30 days after the contract was executed plaintiff delivered his abstract of title to defendant's attorney, and the title was examined and a written opinion furnished plaintiff. This opinion, which appears in full in the record, pointed out various defects in the title which could be cured only by an action to quiet title brought by plaintiff, and specifically pointed out that taxes on the property for various years were unpaid, and required payment thereon. Following the receipt of this opinion plaintiff brought an action to quiet title as required by the opinion. Defendant paid the installment of $900 due on the contract on October 1, 1944, and same was by the bank credited to plaintiff as a payment on the purchase price. On September 28, 1945, defendant paid into said bank the sum of $1,484, being the balance due under the contract with interest at 6 per cent. At that time judgment had been rendered quieting plaintiff's title as to 150 acres of the land in controversy, but a quiet title action was pending and undetermined as to the other ten acres. When defendant paid the $1,484, he delivered to the American National Bank, along with his check, a written statement which directed attention to the fact that in the contract it was provided that plaintiff should convey good and merchantable title to the land, pointed out that the title was involved in judicial proceedings, and provided

" . . . and this tender is made with the exception that you do not pay to Chas. Hastings directly or indirectly said sum of money, but that you hold the same as his agent until the title to the property is made good and marketable."

This was signed by defendant, and a written receipt for the payment was given defendant by the bank stating that it understood that the title was

not good and marketable at that time, and that it would hold the money and not pay the same to plaintiff or otherwise until the title to the land was made good and marketable. On November 2, 1945, plaintiff obtained judgment quieting his title to the remaining 10 acres of the land involved. The bank did not credit plaintiff's account with the said sum of $1,484, and on January 24, 1946, plaintiff instituted this action. At the trial, in addition to the facts above stated, the evidence showed that all of the delinquent taxes on said land had not been paid, and that at the time of trial unpaid taxes against the property which should have been paid by plaintiff amounted to $112. Plaintiff testified that he had gone to the county treasurer's office and paid, as he was advised by the treasurer, all delinquent taxes against the land, and that he would immediately pay the $112 shown by the county treasurer's statement to defendant. The trial court required him to do that before it would enter judgment for plaintiff, and although the record does not show that such payment was made, plaintiff states in his brief that it was made prior to judgment, and we assume that this statement is correct.

Defendant here contends that his payment into the bank to be held by the bank pending the curing of plaintiff's title was a sufficient payment, and that before plaintiff was entitled to have said sum placed to his credit he was obligated to furnish and tender good and merchantable title to the property.

Plaintiff, on the other hand, asserts that defendant's obligation to pay was wholly independent of any requirement that plaintiff's title be good and merchantable and that the failure of defendant to pay said sum to the credit of plaintiff and receive from the bank plaintiff's warranty deed was a breach of the contract.

In other words, defendant contends that the covenant of plaintiff to furnish good and merchantable title and the promise of defendant to pay said sum into the bank to plaintiff's credit were dependent and concurrent. Plaintiff asserts the contrary.

A careful analysis of the contract impels us to the conclusion that the contention of defendant is correct, and that it was the intention of the parties that plaintiff's deed, when delivered to defendant, should convey good and merchantable title.

In Howerton v. Callaway, Carey & Foster, 175 Okla. 311, 52 P. 2d 845, construing a contract for the sale of real estate where the purchase price was payable in installments, and the obligation of the owner was to furnish a good and valid title, we said:

"Defendant in his brief takes the position that the delivery of the deed by the defendant was an obligation to be concurrent with the payment of the final cash installment of $5,500 by plaintiff. We agree with this construction of the contract for in contracts for the sale of realty, the undertakings of the respective parties are always considered dependent unless the contrary intention clearly appears, and, consequently, the payment of the whole purchase price and the giving of the deed are regarded as concurrent acts, and the ability and readiness of either party must exist before the other can be enforced."

In 55 Am. Jur. p. 717, section 270, the general rule is stated as follows:

"The general rule is that although the title of one who enters into an executory contract for the conveyance of land may be defective at the time he enters into such contract, if the vendor is able to convey a good title when the time for the conveyance of the land arrives, this is sufficient. Accordingly, if the vendor is able to make a good title at the time stipulated for conveyance, he may ordinarily maintain an action at law for damages for a breach by the purchaser, although such good title was acquired by the vendor after the making of the agreement to convey. The same rule applies where the vendor seeks to compel specific performance on the part of the vendee; if able to make good title

at the time stipulated the vendor may compel the purchaser to perform his part of the agreement even though the former did not own the land at the time he entered into the contract."

Applying these rules to the instant case we think it reasonably apparent that the obligation to make good title, the payment of the final installment of the purchase price, and the delivery of the deed, were all tied together, and that the parties intended that when the final installment was paid and the deed delivered, defendant should be vested with good and merchantable title. To hold, as contended by plaintiff, the payment of the balance of the purchase price due and acceptance of the deed by defendant were obligatory upon defendant regardless of whether or not the deed conveyed title would require the defendant to accept a deed which might convey no title whatever, and then, if plaintiff was unable to make his title good, sue plaintiff for the breach of his covenants of warranty. Obviously this would work a hardship upon defendant which it is difficult to believe he would willingly assume, since thereby he might be forced to pay for and receive that which he knew was worthless, and depend for reimbursement solely upon his ability to recover from plaintiff. We find nothing in the contract which justifies the conclusion that the parties contemplated or intended such a possibility. We think it reasonably apparent that the parties assumed that the period of almost two years intervening between the date of the contract and the final payment would be amply sufficient to enable plaintiff to correct the defects in his title if he could do so. We hold that the reasonable construction of the contract is that the requirement that plaintiff furnish merchantable title, and the requirement that defendant make the final payment and receive the deed, were dependent and concurrent, and that payment by defendant when, by the deed of plaintiff he would not receive good title, could not be enforced.

While it is true that plaintiff's title was quieted in him shortly after defendant made the final payment conditioned as above stated, it is also true that there were taxes against the land which were past due and delinquent, and, therefore, liens upon the land, and that even if plaintiff's title was quieted his deed to defendant would not have conveyed title free and clear from taxes as provided in the contract.

In this situation the action by plaintiff, being brought at a time when he could not tender or convey to defendant a good and merchantable title free from mortgages, judgment liens, or taxes, as provided in his contract, was prematurely brought. He had no cause of action against the defendant under the contract until he could tender and convey to defendant the title which he had contracted to convey. It follows that the judgment of the trial court was erroneous.

Reversed, with directions to dismiss the action without prejudice.

HURST, C. J., DAVISON, V. C. J., and RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.