DEPOSITORS TRUST COMPANY
TRUSTEE OF THE ESTATE OF
JOSEPH M. CLOUTIER

*vs.*

RICHARD E. BRUNEAU

AND

MAURICE H. DREW


RICHARD BRUNEAU

AND

MAURICE DREW

*vs.*

DEPOSITORS TRUST COMPANY
TRUSTEE OF THE ESTATE OF
JOSEPH CLOUTIER

Kennebec.   Opinion, April 29, 1949.

*Locke, Campbell, Reid, and Hebert,*
        for Depositors Trust Co.

*Benjamin L. Berman, David V. Berman,*
        for Richard E. Bruneau and Maurice H. Drew.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

MERRILL, J.   On exceptions to the acceptance of reports of a referee.   The first action is brought by Depositors

Trust Company in its capacity as trustee under the will of Joseph M. Cloutier, (hereinafter called the vendor) against Richard E. Bruneau and Maurice H. Drew (hereinafter called the vendees) to recover damages for the breach of a contract to purchase certain real estate. The real estate was located in or near the business district of Winthrop and consisted of three contiguous lots numbered 3, 4 and 5 on a plan introduced in evidence. The second action is brought by the vendees against the vendor to recover back $1,000 paid by them to it to bind the contract after their bid in response to an advertisement for bids had been accepted. Their bid for the three lots was $6,100. Each case was referred under a Rule of Court with right of exceptions in matters of law reserved. The cases were heard together by the referee who found for the plaintiff (vendor) in the first case and for the defendant (vendor) in the second case. Objections to the referee's reports were duly filed in both cases. The court overruled the objections in each case and accepted the reports. Exceptions to the rulings of the court were duly filed and allowed, and it is upon these exceptions that the cases are before this court. The entire record of the cases, including the exhibits and the transcript of the evidence, is made a part of the bills of exceptions and is before this court.

The evidence discloses that the vendor and vendees entered into a contract for the sale and purchase of the land in question, and that the vendees made a down payment of one thousand dollars thereon on November 8, 1946. Conveyance was to be made by the vendor when it obtained license therefor from the Probate Court. The time of performance on the part of the vendor was postponed to such time as it obtained said license. A few days after the down payment was made to the vendor, the vendees discovered that an underground drain bisected lot 5 diagonally in a sweeping curve from corner to corner thereof. The drain was constructed of twelve inch tile (inside measurement) laid with the top approximately two and one-half feet below

the surface of the ground. It was an integral part of a drain extending from a catch-basin on Bowdoin Street to Mill Stream. The drain, starting at the catch-basin, crossed Bowdoin Street, Lot 5, other private lands, to and across Union Street, other private land and discharged into Mill Stream. It was a drain maintained by the Town of Winthrop for street drainage as distinguished from a sewer. Its physical maintenance, as then existing, would prevent the vendees from constructing a contemplated building on Lot 5, with a cellar thereunder of the planned depth. At the time of entering into the contract the vendees and the vendor were both ignorant of the existence of the drain. Before the execution of the contract the vendees had communicated to the vendor enough of their contemplated building plans, so that had the vendor known of the existence of the drain, it would also have known that with it permanently maintained where and as it was, the vendees could not use the lot for its contemplated purpose.

Within a day or two after discovering the existence of the drain, the vendees informed the vendor of its existence, that they could not use the lot for its intended purpose, could not locate the building elsewhere on the lots and demanded the return of the down payment. The vendor did not comply with this demand.

Later, the vendor applied for license to sell, which was granted January 6, 1947. After writing some letters to vendees' attorneys, the vendor tendered a Trustee's Deed of the premises on or about March 12, 1947. The deed being refused, the suit for damages was instituted by the vendor against the vendees August 18, 1947, and on December 17, 1947, the vendees commenced their action against the vendor to recover back the down payment of one thousand dollars.

The referee as before stated, found in favor of the vendor in both actions.

The only issue raised by the objections and the bills of exceptions which we need discuss is whether or not the existence of the drain justified the attempted rescission of the contract by the vendees. As to all other questions, the evidence so clearly justified the findings of the referee with respect thereto that we will not consider them in detail.

As the issues are presented to us, the determination of both cases depends upon whether or not the vendees were justified in their attempted rescission. If they were, they are not liable to the vendor in damages and are entitled to recover back the down payment. If they were not, the findings of the referee in favor of the vendor must be sustained and the exceptions overruled.

In determining whether or not the vendees were justified in their attempted rescission of the contract, we have to consider not only whether or not the title of the vendor was such that the vendees could reject it, but also whether or not they were justified in rejecting it when they did, viz.: prior to the time for performance by the vendor.

As the contract was silent as to the kind of deed by which conveyance was to be made, all that the vendees could demand would be an ordinary Trustee's Deed. In fact, in this State in the absence of a special agreement to the contrary, a vendor who has a good title need tender only a quitclaim deed to satisfy a contract to convey. *Garcelon* v. *Tibbetts*, 84 Me. 148; 24 A. 797.

In purchases from a trustee the purchaser, at his own risk, must satisfy himself not only that the title to the property is good, but that the sale has been made according to the decree or order. 54 Am. J. 342, Sec. 430.

However, these principles do not, in the absence of a special contract as to the nature of the title to be conveyed, compel a vendee to accept from a trustee a defective or unmarketable title. Every vendor in the absence of provision otherwise in the contract, impliedly contracts to tender a

marketable title. Restatement of the Law, Restitution, Page 109, Chap. 2, Sec. 24, Par. e. If he fails to do so the vendee can reject the tendered title and if he has made partial advance payments can recover such payments back. Restatement of the Law, Restitution, *supra, idem.*

We consider first the question as to whether or not the existence of this drain rendered the title unmarketable.

If the drain was being maintained and its maintenance could be permanently continued by the Town of Winthrop as a matter of right against the owner of Lot 5, it would be such an encumbrance as would render the title unmarketable.

The vendees claimed that the drain was being maintained and its maintenance in the future could be continued by the town as of right. The referee made the following finding:

> "I find from the evidence that this drain was being maintained on lot number five without legal right and is, at best, an encroachment on lot number five."

This finding is challenged by the exceptions. Unless this finding constitutes error in law the exception thereto must be overruled. To constitute an error in law a finding of fact by a referee must be made without evidence from which such fact may be found. If there be any evidence which supports the finding of fact, such finding is conclusive. These principles have been reiterated so many times by this court that citation therefor is unnecessary.

Not only did the vendees, in the hearing before the referee, have the burden of proving that this drain was a legal encumbrance, but they *now* must show that the contrary finding by the referee constitutes an error in law.

The evidence negatived any possibility that the drain was being maintained on lot number 5 under a grant either of the land or of an easement. The drain had not been in

existence long enough for the town to have acquired any rights by prescription.

The defendants claim that this was a legal drain built and maintained by the Town of Winthrop under authority of R. S., 1930, Chap. 25, Secs. 26 and 27, which sections are as follows:

> "Sec. 26. **Towns may construct ditches and drains to drain highways; control; liability for damages.** The municipal officers of a town may at the expense of the town construct ditches and drains to carry water away from any highway or road therein, and over or through any lands of persons or corporations when they deem it necessary for public convenience or for the proper care of such highway or road, provided that no such ditch or drain shall pass under or within twenty feet of any dwelling-house without the consent of the owner thereof. Such ditches or drains shall be under the control of municipal officers, and wilful interference therewith shall be punished as is provided by statute for obstruction in a traveled road. If such town does not maintain and keep in repair such ditches and drains, the owner or occupant of the lands through or over which they pass may have his action against the town for damages thereby sustained.
>
> **Sec. 27. Procedure.** Before land is so taken, notice shall be given and damages assessed and paid therefor as is provided for the location of town ways."

To establish its claim that this drain was built and maintained under the authority of said sections of the statute (which are now found in R. S., Chap. 84, Sec. 156), the vendees rely upon evidence which shows the following facts: The drain was constructed for the Town of Winthrop by the road commissioner and his crew who were paid therefor by the town. The town appropriated money in town meeting for its construction. It was built in 1938, and the town has since maintained it. At the time it was

built the vendor's testator who then owned Lot 5 objected to its being built, as did at least one other land owner. The town employed a lawyer, and the drain was built without further objection.

No attempt was made by the vendees to establish the legal existence of this drain by the production of any record of the proceedings of the municipal officers of the Town of Winthrop. The transcript in these cases is entirely devoid of any testimony as to why such record was not produced and offered in evidence. In fact the transcript fails to show whether or not any such record was ever made.

Proceedings under the sections of the statute above quoted are in the nature of eminent domain. As stated by this court with respect to this same statute, in the case of *Austin* v. *Inhabitants of St. Albans,* 144 Me. 111; 65 Atlantic (2nd) 32-34, which case was argued on the same day as the instant cases:

> "In the performance of their duties, including location, xxxxxx the municipal officers do not act as agents of the town, but they act as public officers of the State in a quasi judicial capacity. *Davis* v. *Bangor,* 101 Me. 311; 64 A. 617; *Keeley* v. *Portland,* 100 Maine, 260, 61 A. 180.
> The action of municipal officers, as such judicial board, must be taken with formality and entered of record. Parol evidence cannot supply a record, and parol evidence is inadmissible to prove the action of the board, unless the record is incomplete, incorrect, or lost. *Kidson* v. *Bangor,* 99 Maine, 139, 147; 58 A. 900."

Whether or not from long use and lapse of time a presumption of lost record of the location of a drain may arise, as is intimated with respect to highways in certain cases, we express no opinion.

Because of the unexplained failure of the vendees to offer record evidence of the legal establishment of this drain, the referee was justified in making the finding that from the

evidence "this drain was being maintained on lot number five without legal right."

As said by the New Jersey Court in *Hoffman* v. *Rodman*, 39 N. J. Law, 252, 255, relative to the recording of the return of the laying out of a highway:

> "The best evidence of this essential fact is the record itself or a properly authenticated copy of it; and until the absence of this evidence has been satisfactorily accounted for, no other, of inferior degree, will be permitted to supply its place. Why the best evidence of the existence of the alleged road has not been produced in this case, remains entirely unexplained."

The referee in this case found that this drain was at best an encroachment. With respect to encroachments and their effect upon the marketability of title the rule is well stated in 55 American Jurisprudence, 706, Sec. 252:

> "In determining whether encroachments are of such a character as to justify the vendee in refusing to take title, the court will weigh the object of and inducement to the vendee in entering into the contract, and, looking into the merits and justice of each particular case, relieve the vendee from the contract to purchase if the character of the transaction, the circumstances, and the equities require. There can, of necessity, be no fixed rule for determining the extent of an encroachment necessary to bring any particular case outside the rule 'de minimis non curat lex,' since the facts of each case are invariably different, and the test to be applied is whether the encroachment is substantial enough seriously to interfere with the use and enjoyment of the premises. Hence, each case must be determined upon its own merits."

The referee, in his report, recognizing this rule, made the following finding:

> "What are the facts in the instant case? It seems clear that the drain is not being maintained with legal right so that the owner of lot number five

may have it removed. The Road Commissioner for the Town of Winthrop who put the drain in says he could dig it up, remove it and refill the trench for the amount of One hundred twenty-five dollars ($125).

It seems as if the plaintiff or vendor should have been given an opportunity to remove the encroachment and the evidence shows it could have been removed for a comparatively small amount. This, the defendants (Vendees) did not do.

I find that the defendants (Vendees), upon the law and the facts, were not justified in their attempted rescission of the contract."

This brings us to a consideration of the second phase of the question as to whether or not the presence of this drain as an encroachment justified the vendees in their attempt at rescission *at the time they attempted to rescind.*

"The vendee's right to assert an encroachment as a defect in the vendor's title is dependent upon whether such encroachment exists at the time for the performance of the contract. A vendor is entitled to remove an encroachment if he can do so at any time within the period during which he has the right to tender a deed to the vendee under the contract of sale." 55 Am. J. 709, Sec. 256.

This is but an application to encroachments of the following rule:

"The general rule is that although the title of one who enters into an executory contract for the conveyance of land may be defective at the time he enters into such contract, if the vendor is able to convey a good title when the time for the conveyance of the land arrives, this is sufficient." 55 Am. J. 717, Sec. 270.

"Ordinarily, if the vendor in a contract for the sale of land is able to convey a good title when the time for the performance of the contract arrives, he is deemed to have fulfilled his obligation although his title may have been defective at the time he entered into the contract, and it is the pre-

vailing American doctrine that ordinarily, in the absence of misrepresentation or fraud, a vendee cannot, prior to the time fixed by the contract for conveyance, complain that the vendor's title is defective or encumbered." 55 Am. J. 722, Sec. 277.

These general rules are subject, however, to the following limitation:

"Almost all of the cases wherein the point has been in any way touched upon either hold or recognize that if defects or encumbrances of title are of such a character that the vendor has neither the title which he has agreed to convey nor in a practical sense any prospect of acquiring it—that is, if the vendor probably or presumably will not have the agreed title at the time set for the conveyance, the defects or encumbrances being probably or presumably not removable—the vendee is not required to continue with the contract, but may rescind, even though the time set for conveyance has not arrived. A vendee is not required to perform, but may rescind prior to the time set for conveyance, where the premises are subject to permanent restrictions or other servitudes of a character which would justify rescission at the time of conveyance." 55 Am. J. 726, Sec. 283.

Applying these rules to the attempted rescission by the vendees, the referee found that the encroachment was not being legally maintained, that it could be easily removed at a relatively small expense, and that its presence did not justify rescission by the vendees before an opportunity had been afforded the vendor to remove it. There was evidence in the record to support these findings of the referee and exceptions to the acceptance of the reports based upon objections to these findings of fact and rulings of law by the referee cannot be sustained.

As the cases were tried everyone, counsel for both parties and the referee, treated the justification or lack of justification of the *attempted rescission* by the vendees as determinative of the rights of the parties. The vendees'

position is well illustrated by the following quotation from their reply brief: "The rights of the parties became fixed on the date when Bruneau and Drew attempted to rescind." The referee found, and we have held rightfully found, that the attempted recission was not justified.

From the record it appears that no one even considered the question of whether or not the failure of the vendor to remove the drain in the period between the abortive attempt at rescission and the tender of the deed, and the consequent existence of the drain at the time of the tender, affected or could affect the rights of the parties. The referee having found the attempted rescission unjustified decided both cases in favor of the vendor.

In effect, the referee made two findings. First, that the attempted rescission was unjustifiable; second, that because the attempted rescission was unjustifiable the vendor was entitled to judgment in both cases. The objections to the acceptance of the referee's reports and the exceptions to the rulings of the justice at *nisi prius* are directed to the first of these findings by the referee, as distinguished from the second. The second finding is not specifically set forth as one of the grounds of the objections to the acceptance of the reports, nor is it made the basis of the exceptions to the action of the justice in overruling the objections and accepting the reports. We are not called upon to approve or disapprove said second finding by the referee. Nor do we even intimate our opinion as to its correctness. Neither do we express any opinion as to the effect upon the rights of the parties of the failure of the vendor to remove the drain after the attempted rescission and before the tender of the deed, or of the continued presence of the drain at that time. These questions are not raised by the bills of exceptions and are not presented to us for determination.

"Reports of Referees are only open to attack on certain definite lines and according to certain definite procedure." *Staples* v. *Littlefield*, 132 Me. 91, 92; 167 A. 171.

Rule XXI of the Supreme Judicial Court and Superior Court requires that objections to the reports of a referee shall be in writing and shall set forth specifically the grounds of the objections and that these only shall be considered by the court.

The invariable practice in this State has been that there must be strict compliance with this rule if the exceptions are to be considered by this court. *Camp Maqua* v. *Town of Poland,* 130 Me. 485, 486; 157 A. 859. The excepting party is confined in his bill of exceptions to those contentions *specifically set out* by him in his written objections at *nisi prius. Staples* v. *Littlefield, supra,* 93.

These are salutary rules, binding not only upon the parties but upon the court as well. Parties cannot have just cause for complaint because the court does not consider questions which they have failed to present to it in the manner prescribed by law. As we said in *Throumoulos* v. *Bank of Biddeford,* 132 Me. 232, 233; 169 A. 307:

> "The parties have selected their own tribunal to try this case, and under such circumstances are held to a strict compliance with the provisions of the statutes and rules of court governing the procedure authorized in such instances."

The factual findings of the referee so far as attacked by the objections and exceptions were supported by the evidence. The rulings of law by the referee attacked by the objections and exceptions were correct. The action of the justice at *nisi prius* in overruling the objections and accepting the reports was correct, and the exceptions to his rulings in each case must be overruled.

In the case Depositors Trust Company, Trustee of the Estate of Joseph M. Cloutier v. Richard E. Bruneau and Maurice H. Drew,

*Exceptions overruled.*

In the case Richard Bruneau and Maurice Drew v. Depositors Trust Company, Trustee of the Estate of Joseph Cloutier,

*Exceptions overruled.*