DAIL, Appellant v. VODICKA, et ux, Respondents

(237 N.W.2d 7)

(File No. 11524. Opinion filed December 12, 1975)

Fred F. Hendrickson, Rapid City, Marvin D. Truhe, Rapid City, for plaintiff and appellant.

Charles H. Whiting, Rapid City, for defendants and respondents.

WINANS, Justice (on reassignment)

In this action to recover a commission for the sale of real property the jury at the trial stage found for the defendants. On appeal plaintiff raises questions dealing with the admissibility of parol evidence relating to the contract, with the giving of two jury instructions and with the sufficiency of the evidence to support the verdict. Having considered all questions raised we affirm the lower court's decision.

On August 1, 1973, Defendants Joseph and Delores Vodicka signed a "uniform sales agency contract" which gave to Dail Realty an exclusive right, until November 1, 1973, to sell a section of land in Pennington County, South Dakota. The agreement required a down payment from a purchaser of twenty thousand dollars ($20,000) with a fifty thousand dollar ($50,000) balance to be paid on a sixteen (16) year contract for deed in annual payments at six and a half percent (6½ %) interest. A total cash purchase would not be accepted.

Following the property description these words were included in the contract, in ink: "TAX DEED ON 160 ACRES 2 EA QUIT CLAIN (sic) DEEDS." Also included in the contract was this standard machine-printed clause:

"In the event of a sale I will convey, or agree in writing to convey, *by warranty deed, a good merchantable* title to said property to the purchaser thereof. Further, I will furnish an abstract of title certified to date of sale, or in lieu thereof a policy of title insurance guaranteeing merchantable title." (emphasis added)

For the production of a purchaser "ready, willing and able" the owners agreed to pay the realtor a ten percent (10%) commission.

Plaintiff realtor found a potential buyer, apparently after much effort, and on November 1, 1973, Defendants signed an "offer and agreement to purchase" contract with the "purchaser" on the full six hundred forty (640) acres. No mention was made in this agreement of tax or quit claim deeds. Rather, the contract provided that

"Merchantable title shall be conveyed by Warranty Deed properly signed and with the necessary State Transfer Fee paid for recording. An Abstract of Title shall be continued to date and furnished promptly to the Buyer for examination, or in lieu of an abstract of Title, Title Insurance may be substituted."

Terms of sale were substantially as prescribed in the listing contract with prepayment of the contract again being expressly prohibited.

At the time of listing a quiet title action was pending as to the quarter of land to which Defendants held the tax deed and two quit claim deeds. Near the end of November Appellant advised Morris Unger, the would-be purchaser, that the Vodickas did not have merchantable title to the one quarter section in question. It seems that Mr. Unger still wanted to go through with the purchase provided that four thousand dollars ($4,000) of the purchase price be held in escrow pending clearance of title. Unger was informed by Respondents' counsel that this was unacceptable and further that he (Unger) would have to bring the quiet title action on his own behalf. Having reached no mutually satisfactory agreement, the Vodickas returned Unger's one thousand dollars ($1,000) earnest money which had been

paid November 1st and negotiations ceased. B. H. Dail of Dail Realty, the real estate broker in question, thereupon claimed that he had fulfilled his part of the broker's contract and sued for recovery of his commission from the Vodickas.

In their answer to Dail's complaint, the Vodickas admitted signing both contracts, but alleged that when the property was listed they had informed Plaintiff Dail that they "could and would only give the purchaser of said property a Quit Claim Deed to said 160 acres and that said Uniform Sales Agency Contract expressly excepted the 160 acre tract * * * from the provisions thereof by which defendants agreed that, in the event of a sale, they would convey to the purchaser a merchantable title by Warranty Deed."

The case was tried at Rapid City before a jury on June 24, 1974. At its conclusion the jury found for the defendants and plaintiff now brings this appeal.

Plaintiff-appellant first charges that the trial judge erred in admitting into evidence the testimony of witnesses as to alleged oral conversations they had with Appellant regarding the terms of the listing and purchase agreements on the sale property. Plaintiff himself had written the words "TAX DEED ON 160 ACRES 2 EA QUIT CLAIN (sic) DEEDS" into the listing contract. These words, when read with the promise to convey good merchantable title by warranty deed in the same contract surely create an ambiguity for they could well be, at least on their face, inconsistent. It is a fundamental rule of contract construction that the entire contract and each and all of its parts and provisions must be given meaning if that can consistently and reasonably be done. 17 Am.Jur.2d, Contracts § 259, pp. 660-662. Because an ambiguity had been created in the listing contract and because this ambiguity manifestly carried over into the agreement to purchase, parol evidence was admissible at trial to make clearer the intention of the parties to the agreements. In *Christiansen v. Strand*, 1965, 81 S.D. 187, 132 N.W.2d 386, through Judge Rentto, we said:

"With us the rule that parol or extrinsic evidence may not be admitted to vary the terms of a written in-

strument is of statutory origin. SDC 10.0604 [now SDCL 53-8-5]. However, when the writing is uncertain or ambiguous such evidence is admissible to explain the instrument, but it is not admissible to add to or detract from the writing. [citations omitted] In other words, evidence is resorted to where the ambiguity may be dispelled to show what they meant by what they said, but not to show that the parties meant something other than what they said."

This was in keeping with our holding in *Eggers v. Eggers*, 1961, 79 S.D. 233, 110 N.W.2d 339 that:

"Oral negotiations or agreements which preceded or accompanied the execution of a written contract may be employed to explain its uncertain expressions but, except where reformation is sought, not to contradict and nullify its express terms."

In view of the ambiguity existing in the contracts in question we are in agreement that the trial court did not err in admitting into evidence the testimony of the witnesses with regard to conversations they had had with Appellant concerning the ambiguities.

Appellant next charges that the trial judge erred in giving Instructions Six and Nine to the jury, which instructions stated that if Appellant knew or should have known at the time of listing the property that the title had a possible defect he cannot recover his commission.

█ The law is well settled that if, at the time of acceptance' of a listing, a real estate broker knows of any defects in the owner's title or is aware of facts sufficient to put a reasonably prudent person on inquiry which, if followed with reasonable diligence, would advise him of any such defect, the broker is not entitled to recover a commission if the sale fails because of said defect. *Best v. Kelley*, 1945, 22 Wash.2d 257, 155 P.2d 794; *Orr v. Woolfolk*, 1933, 250 Ky. 279, 62 S.W.2d 1029.

█ In this case both defendants testified that, prior to signing Exhibit 1, the listing contract, they had explained to Plaintiff that they did not possess merchantable title to the 160 acres in

dispute. It is further admitted that Plaintiff saw and copied a previous listing agreement in which the words "TAX DEED + 2 QUIT CLAIM DEED ON 160A" were handwritten *immediately after* the standard printed clause which stated:

> "I represent that this description is correct, that I have the legal right to sell the property described herein and that I can and will duly furnish a good and sufficient warranty deed and abstract showing a merchantable title (or grant deed and title insurance policy) to said property when sold."

In other words, it can easily be inferred that the additional writing was to be a modification of this clause. Plaintiff, having surely seen this, was put on notice and cannot be heard to claim ignorance of Defendants' title situation. The instructions were a correct rendition of the law and were properly given.

■ Finally, Appellant charges that the verdict was unsupported by the evidence in that Appellant had provided a willing and able buyer and that the sale failed for lack of merchantable title and also that Mrs. Vodicka's testimony was unworthy of belief in regard to the oral statements modifying the written contract. Jury Instruction Number Nine dealt with both of these questions. The jury was entitled to return a verdict in favor of Respondents if it found in their favor on either issue, i. e., the issue of the buyer willing to buy on the terms set out in the listing and the issue of Plaintiff's knowledge at the time of listing that the questioned property was not merchantable. Regardless of Mrs. Vodicka's testimony the jury could have concluded in favor of the Vodickas from the ambiguity in the contracts and from the fact that Plaintiff surely should have known of the title problem when he inserted the phrase about the tax deed and quit claim deeds into the contract.

In view of the foregoing we hold that the parol evidence was properly admitted, that the instructions in question were rightly given and that the evidence introduced at trial was sufficient to support the jury verdict.

Affirmed.

WOLLMAN and COLER, JJ., concur.

DUNN, C. J., and FOSHEIM, Circuit Judge, dissent.

FOSHEIM, Circuit Judge, sitting for DOYLE, J., disqualified.

FOSHEIM, Circuit Judge (dissenting).

Mrs. Vodicka held a real estate salesman's license. Nevertheless, both Mr. and Mrs. Vodicka claimed they did not read the merchantable title provisions of either the listing agreement or the sale contract. Defendants contend this parol evidence was justified because the tax deed notation and the merchantable title provision of the agency agreement posed an ambiguity which needed explanation. In *Christiansen v. Strand*, 1965, 81 S.D. 187, 132 N.W.2d 386, we did hold that when a writing is uncertain or ambiguous, oral evidence is admissible to explain the instrument, and in *Eggers v. Eggers*, 1961, 79 S.D. 233, 110 N.W.2d 339, we said that oral negotiations or agreements which preceded or accompanied the execution of a written contract may be employed to explain its uncertain expressions. In both *Christiansen* and *Eggers*, we qualified the ambiguity rule by holding that parol evidence cannot be used to add to, nor detract from, the writing or to contradict or nullify its express terms.

In *Eggers*, we said, "In our opinion to so employ the offered proof would be to reform rather than to interpret and explain the language of the instrument. So used the offered proof would contradict the express words of the instrument rendering it payable on demand." 79 S.D. at 238, 110 N.W.2d at 342.

SDCL 53-8-5 provides:

> "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

We have consistently held that this statute reflects the great weight of authority and should be well understood and uniformly

adhered to. It is substantive law and not a rule of evidence. *Eggers v. Eggers,* supra; *Moncur v. Jones,* 1948, 72 S.D. 202, 31 N.W.2d 759; *Baker v. Jewell,* 1959, 77 S.D. 573, 96 N.W.2d 299. In *Kindley v. Williams,* 1956, 76 S.D. 225, 76 N.W.2d 227, Judge Rudolph quotes from *Farmers' Elevator Co. v. Swier,* 1926, 50 S.D. 436, 210 N.W. 671, regarding this statute:

> " '* * * where a contract which has been reduced to writing and executed by the parties is complete, clear, and unambiguous in its terms and contains mutual contractual covenants, or where the consideration consists of a specific and direct promise to do or not to do certain things, this part of the contract, in the absence of fraud, mistake, or accident, cannot be changed or modified by parol or extrinsic evidence, nor can new terms be added to the contract, nor to the contractual consideration therein expressed, nor, where all these facts exist, may a party to a contract show that he was induced to sign the contract by the making of a prior or contemporaneous oral agreement, where such showing would be tantamount to adding to or subtracting from the contractual consideration expressed in the written contract.' " 76 S.D. at 228, 76 N.W.2d at 229-230.

It is presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract, *Stoefen v. Brooks,* 1939, 66 S.D. 587, 287 N.W. 330; *Midway Farmers' Warehouse Co. v. Foley,* 1927, 51 S.D. 288, 213 N.W. 507; *Janssen v. Tusha,* 1939, 66 S.D. 604, 287 N.W. 501. "To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." 17 Am.Jur.2d, Contracts, § 149, at p. 498.

Regarding the claimed ambiguity, if a vendor has an interest in the land to be conveyed, it is not necessary that he be able to perform at the time the contract is made. It is sufficient if he is able to perform when the vendee has a right to call upon him for a performance, *Martinson v. Regan,* 1909, 18 N.D. 467, 123 N.W. 285; *Golden Valley Land & Cattle Co. v. Johnstone,* 1913,

25 N.D. 148, 141 N.W. 76; *Depositors Trust Co. v. Bruneau,* 1949, 144 Me. 142, 66 A.2d 86; *Hepburn & Dundas's Heirs v. Dunlop & Co.,* 1 Wheat 179, 14 U.S. 179, 4 L.Ed. 65; *Clark v. Ingle,* 1954, 58 N.M. 136, 266 P.2d 672; *Kendall v. Hastings,* 1948, 200 Okl. 643, 198 P.2d 998; *Woodard v. Allen,* 1953, 1 Utah 2d 220, 265 P.2d 398; 77 Am.Jur.2d, Vendor and Purchaser, § 234. According to the agency contract, defendants would have sixteen (16) years after the sale to provide a merchantable title. Cash and prepayments were expressly forbidden. Payment and delivery of title were mutual dependent covenants. *Rapp v. Petrik,* 1933, 61 S.D. 426, 249 N.W. 736. Mr. and Mrs. Vodicka would also have a reasonable time to remedy any defects in the title pointed out by the purchaser's attorney, *Vangsness v. Bovill,* 1931, 58 S.D. 228, 235 N.W. 601, 77 Am.Jur.2d, Vendor and Purchaser, § 234. In the interim, several circumstances or combination of circumstances could operate to remedy any title deficiencies, such as the pending or a future quiet title action; the unbroken chain of title statute, SDCL 43-30-2, which expressly covers title by tax deed; adverse possession, SDCL 15-3-1 et seq.; or acquisition of any outstanding adverse interests.

It follows that the tax deed notation on the listing contract was not incompatible with the covenant to convey a merchantable title in the future and no ambiguity existed.

I would reverse.

I am authorized to state that Chief Justice DUNN joins in this dissent.