2002 SD 136

**CARSTENSEN CONTRACTING, INC.,**
**Plaintiff and Appellee,**

v.

**MID–DAKOTA RURAL WATER**
**SYSTEM, INC., Defendant**
**and Appellant.**

No. 22345.

Supreme Court of South Dakota.

Considered on Briefs on Aug. 26, 2002.

Decided Nov. 13, 2002.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Timothy M. Engel of May, Adam, Gerdes & Thompson Pierre, South Dakota, Attorneys for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] In this construction contract dispute, we must decide whether a requirement in the contract that the general contractor pay "all claims growing out of the lawful demand of" subcontractors, laborers, mechanics, materialmen, furnishers and suppliers means claims only on which a mechanic's lien has been filed. In granting summary judgment, the circuit court held that the general contractor had no duty to pay the unpaid bills from a bankrupt subcontractor's suppliers, since the suppliers filed no mechanic's liens to secure their claims. Because the filing of a mechanic's lien is not what makes a claim "lawful," we conclude that, under the terms of the contract, the owner had the right to withhold the sums necessary to pay claims against the project, even if no mechanic's lien had been filed to secure those claims. We reverse.

**Background**

[¶ 2.] This is a contract dispute between Carstensen Contracting, Inc. and Mid–Dakota Rural Water System, Inc. Carstensen, a general construction contractor experienced in the building of rural and municipal water systems, is a Minnesota corporation, authorized to do business in South Dakota. Mid Dakota, a South Dakota nonprofit corporation headquartered in Miller, owns and operates a rural water system that provides potable water to rural and municipal residents of east central South Dakota.

[¶ 3.] The parties stipulated to an extensive set of facts, some of which will be recited here. The documents relevant to this dispute are the Agreement, General Conditions, and Supplemental General Conditions (collectively, the contract docu-ments).[1] Mid–Dakota prepared these documents; Carstensen executed them in the form supplied by Mid–Dakota. The contract called for the construction of a rural distribution pipeline and related appurtenances in Hand and Hyde Counties.

[¶ 4.] Carstensen engaged J & M Gravel, Inc., to act as a subcontractor on the project. In the course of its work, J & M incurred certain debts for various items used on, and related to, the project. Such items included rental charges and fuel for equipment, general supplies, food, and housing for J & M's employees. Carstensen alleges that the last date upon which J & M supplied or used services, labor, equipment, or materials was November 2, 2000. Mid–Dakota avers that J & M supplied labor and materials as late as January 29, 2001.

[¶ 5.] No supplier or subcontractor for J & M Gravel filed a mechanic's or materialmen's lien against the project. *See generally* SDCL Ch. 44–9. However, beginning on January 26, 2001, Mid–Dakota began receiving notices from various suppliers of J & M that it had not paid for items it had used. These claims amounted to nearly $160,000.

[¶ 6.] At least two of J & M's suppliers have alleged that a representative of Carstensen encouraged them not to file mechanic's or materialmen's liens against the project, telling them that Carstensen would "take care of" any unpaid bills owed by J & M. Mid–Dakota's engineers are prepared to testify that, in January of 2001, a representative of Carstensen told them that Carstensen would pay J & M's suppliers out of retainage held by Carstensen on J & M's contract with Carstensen.

1. Mid–Dakota argues that the payment bond, being part of the contract documents, is a relevant document for consideration. We need not reach that question because the con- struction contract provisions squarely resolve the issue before us. The record does not reflect whether any claim has been made against the surety.

Carstensen denies that any such promises were made. On February 20, 2001, J & M filed for Chapter 7 bankruptcy.

[¶ 7.] Under these circumstances, Mid–Dakota began to withhold from Carstensen's unpaid compensation an amount Mid–Dakota deemed sufficient to pay claims presented by J & M's suppliers. Carstensen brought suit to recover these withheld funds. Both sides moved for summary judgment on the question whether Carstensen is obliged to pay the unpaid claims of J & M's suppliers for items used on or in connection with the project. The circuit court granted Carstensen's motion for summary judgment and ordered Mid–Dakota to resume payment to Carstensen in accordance with the terms of the contract. Mid–Dakota appeals, raising the following issue: "Whether the trial court erred when it ruled that Carstensen is not liable for debts left unpaid by its subcontractor that subsequently filed for bankruptcy protection?"

**Analysis and Decision**

[¶.8.] In interpreting a contract, we seek to ascertain and give effect to the intention of the parties; at the same time, to find the intention of the parties, we rely on the contract language they actually used.[2] *Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985). In a case where, as here, several documents comprise the contract, all are to be read together to learn the parties' intent. *Dail v. Vodicka*, 89 S.D. 600, 237 N.W.2d 7 (1975). It is a fundamental rule of contract interpretation that the entire contract and all its provisions must be given meaning if that can be accomplished consistently and reasonably.

*Id.* at 603, 237 N.W.2d at 9. However, when provisions conflict and full weight cannot be given to each, "the more specific clauses are deemed to reflect the parties' intentions—a specific provision controls a general one." *State v. Greger*, 1997 SD 14, ¶ 21, 559 N.W.2d 854, 864. Ordinarily, the plain meaning of the contract language will be followed unless there is some ambiguity or different intent manifested. *American State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D.1990).

[¶ 9.] We examine the following provisions in the General Conditions deemed relevant by the circuit court:

§ 6.1: It is understood that, except as otherwise specifically stated in the contract documents, the contractor shall provide and pay for all materials, labor, tools, equipment, water, light, power, transportation, supervision, temporary construction of any nature, and all other services and facilities of any nature whatsoever to execute, complete, and deliver the work within the specified time. . . .

§ 19.6: The CONTRACTOR [Carstensen] will indemnify and save the OWNER [Mid–Dakota] or the OWNER'S agents harmless from all claims growing out of the lawful demand of SUBCONTRACTORS, laborers, workmen, mechanics, materialmen, and furnisher of machinery and parts thereof, equipment, tools, and all supplies, incurred in the furtherance of the performance of the WORK.[3] The CONTRACTOR shall, at the OWNER'S request, furnish satisfactory evi-

---

2. As the evidence presented to the trial court consisted of contract documents and stipulated facts, we confine our review to determining whether the circuit court correctly applied the law and properly interpreted the contracts. *Economic Aero Club, Inc. v. Avemco Ins. Co.*, 540 N.W.2d 644, 645 (S.D.1995).

3. The "work" is defined as all labor, materials, and equipment necessary to construct the project.

dence that all obligations of the nature designated above have been paid, discharged, or waived. If the CONTRACTOR fails to do so, the OWNER may, after having notified the CONTRACTOR, either pay unpaid bills or withhold from the CONTRACTOR'S unpaid compensation a sum of money deemed reasonably sufficient to pay any and all such lawful claims until satisfactory evidence is furnished that all liabilities have fully discharged whereupon payment to the CONTRACTOR shall be resumed in accordance with the terms of the CONTRACT DOCUMENTS, but in no event shall the provisions of this sentence be construed to impose any obligation upon the OWNER to either the CONTRACTOR, the CONTRACTOR'S surety, or any third party. In paying any unpaid bills of the CONTRACTOR, any payments so made by the OWNER shall be considered as a payment made under the CONTRACT DOCUMENTS by the OWNER to the CONTRACTOR and the OWNER shall not be liable to the CONTRACTOR for any such payment made in good faith.

§ 26.3: The CONTRACTOR shall be fully responsible to the OWNER for the acts and omissions of its SUBCONTRACTORS, and of persons either directly or indirectly employed by them, as the CONTRACTOR is for the acts and omissions of persons directly employed by the CONTRACTOR.

[¶ 10.] Mid–Dakota points out that, in accord with § 6.1, the general contractor remains primarily responsible to the owner, even if certain work is subcontracted to third parties. *See Brooks v. Hayes*, 133 Wis.2d 228, 395 N.W.2d 167, 168 (1986). Carstensen argues (and the trial court agreed) that Mid–Dakota ignores the initial caveat in § 6.1: "except as otherwise specifically stated in the contract documents." In particular, Carstensen highlights the word "lawful" in the initial sentence of § 19.6 ("The contractor will indemnify and save the owner or the owner's agents harmless from all claims growing out of the *lawful* demand of subcontractors ... materialmen, and furnisher[s] of machinery ..., equipment, tools, and all supplies ....") and then argues that no *lawful* demands have been made, nor could be made, because the time for making claims against the surety or for filing mechanics' liens has expired. As Carstensen sees the matter, Mid–Dakota is attempting to convert a moral obligation to pay J & M's suppliers into a legal obligation.[4] Carstensen contends that Mid–Dakota has no legal obligation to pay J & M's suppliers, since Mid–Dakota is not in privity with them.

[¶ 11.] The trial court read the contract documents as indicating that only a subcontractor is authorized to assert the legal right (i.e., make the "lawful demand") in question.[5] This is contrary to the explicit language of § 19.6.[6] Then, citing

---

**4.** As Carstensen's counsel stated in the summary judgment hearing, "no one is going to deny in this room that perhaps there is a moral responsibility for Carstensen and Mid–Dakota both to pay these debts ... [of] these folks that are in our area here in Miller...." And Carstensen's brief affirms that "[i]f the suppliers had filed a timely lien upon Carstensen, Mid–Dakota, or the Project, they would have probably been paid."

**5.** A "lawful demand" is "the assertion of a legal right" by "an authorized person." Black's Law Dictionary, 441 (7th ed 1999).

**6.** The contractor "will indemnify and save the owner ... harmless from ... the lawful demand of subcontractors, laborers, workmen, mechanics, materialmen, and furnisher of machinery and parts thereof, equipment,

*McLaughlin Elec. Supply v. American Empire Ins. Co.*, the court ruled that J & M's suppliers were not privy to the contract between Carstensen and Mid–Dakota. 269 N.W.2d 766 (S.D.1978). The court reasoned that while the suppliers may have

> lawful claims against the subcontractor[,] their recourse against Carstensen and/or Mid–Dakota is limited to establishing a mechanic's lien pursuant to SDCL 44–9 et. seq. However, a mechanic's lien ceases "at the end of one hundred twenty days" unless there has been a lien filing under the provisions of SDCL 44–9–15. That was not done in this case. J & M has been paid all that it is due. J & M's suppliers are still owed money. Their only recourse is in bankruptcy court where the debt will either be paid, discharged, or compromised.

Accordingly, the court decided that Mid–Dakota could not withhold payments because of these claims.

[¶ 12.] We note in passing that the stipulated facts, upon which alone a decision on a motion for summary judgment is to be reached in this case, do not support some of the trial court's findings. It is not a stipulated fact that J & M did not perform any work on the project after November 2, 2000; it is a disputed fact. It is not a stipulated fact that J & M was paid all sums due it under the contract; that finding was based solely on the representation of Carstensen's attorney.

[¶ 13.] More important, however, is the trial court's misreading of the contract language. Under the General Conditions of the contract, Carstensen is not obligated simply to pay its subcontractors. In accord with § 6.1, Carstensen's obligation to the owner is to "pay for *all* materials, labor, tools, equipment, water, light, power, transportation, supervision, temporary construction of any nature" in connection with the project work. The indemnification provisions in § 19.6 add to Carstensen's obligation to pay under § 6.1 to the extent that claims by providers must be "lawful." Nothing in the contract documents, however, gives support for the view that all claims of suppliers and others had to have been converted into perfected mechanics' liens in order to be "lawful." While it is true that no mechanic's liens were filed within the statutorily prescribed time period, and therefore no demand for payment based on a lien can be lawful, it is certainly possible that J & M's suppliers could make other claims against Mid–Dakota on another lawful basis.

[¶ 14.] South Dakota case law gives second-tier suppliers and laborers a potential right of action against Carstensen and Mid–Dakota on the theory that they are third party beneficiaries of the construction contract. Under that theory, privity is not required between the second-tier suppliers and laborers and Mid–Dakota if the contract "expressly" provides for their "benefit." SDCL 53–2–6; *Trouten v. Heritage Mut. Ins. Co.*, 2001 SD 106, ¶ 13, 632 N.W.2d 856, 858. This Court has previously held that contract language like that found in § 6.1 is expressly made for the benefit of second-tier suppliers and laborers. *Evans and Howard Fire Brick Co. v. National Surety Co.*, 42 S.D. 109, 173 N.W. 448, 452 (1919).[7] Since such

---

tools, and all supplies, incurred in the furtherance of the performance of the work."

**7.** Although *Evans* involved an action against a surety rather than a general contractor, the same contractual language was involved and

the same analysis was used. Under *Evans*, as long as the contract between the owner and the contractor contains a provision like § 6.1, which obligates the contractor to "pay for all materials, labor, [etc.] ... of any nature" used

third-party claims could be brought and still be viable, Carstensen perforce cannot "furnish satisfactory evidence that all [lawful] obligations ... have been paid, discharged, or waived." It follows that, according to the terms of the contract, Mid–Dakota may withhold payment to Carstensen until the outstanding claims of J & M's suppliers have in fact been paid, discharged, or waived.[8]

[¶ 15.] Reversed.

[¶ 16.] GILBERTSON, Chief Justice, and SABERS, and ZINTER, Justices, and AMUNDSON, Retired Justice, concur.

in connection with the work, second-tier laborers and suppliers may enforce the contract as third party beneficiaries. 173 N.W. at 452.

8. It may be true, as Carstensen asserts, that some of the costs claimed by J & M's suppliers as reimbursable were not legitimately incurred. Disagreements over these matters are properly the subject of further resolution among Mid–Dakota, Carstensen, and the suppliers. We are not giving the suppliers *carte blanche* to obtain whatever they demand. As the attorney for Mid–Dakota argued before the circuit court, it was Carstensen's duty under § 6.1 to pay for "anything [supplies, labor, etc.] that was incorporated in the project."