THOMPSON, Respondent, v. THE DAKOTA INDEPENDENT OIL CO., A Corporation, Appellant

(288 N. W. 148)

(File No. 8233. Opinion filed November 2, 1939.)

**C. G. Carrell,** of Lemmon, and **Dan McCutcheon,** of Belle Fourche, for Appellant.

**Morrison & Skaug,** of Mobridge, for Respondent.

WARREN, P. J. In the spring of 1935 plaintiff Thompson entered into a contract with the defendant oil company to become its bulk station agent and manager of its retail service station in the town of Isabel, South Dakota. Plaintiff was to furnish a truck for the delivery of gas and oil and the defendant a suitable tank and rack for such purpose. Under the contract the plaintiff was to sell the defendant oil company's merchandise at a commission and was to pay $30 per month to the defendant as rent on the service station. Plaintiff continued to act as bulk station agent and service station manager throughout 1935, 1936 and a part of 1937. In June, 1937, a contract for one year was secured with the state department to supply gas and oil for use in several counties adjacent to Isabel. On August 5th, 1937, the defendant took over the service station and bulk plant and ended the plaintiff's employment as agent and manager. Thereafter the plaintiff began a suit to recover $8,089 to

cover damages for loss of his contract, for alleged conversion of his property at the service station and for commissions due him on sales of merchandise belonging to the defendant and also for the hauling of certain merchandise of the defendant from Lemmon to Isabel. Upon a submission of the case the jury returned a verdict for plaintiff in the sum of $3,692.51 and the defendant oil company has appealed.

There is a great deal of dispute as to the meaning of the contract between the respondent and appellant and also regarding the securing of the contract with the highway department. It is respondent's contention that his contract to run the bulk plant and service station, though only a verbal contract, was for one year and that it was renewed from year to year. Appellant on the other hand contends that there was no contract for a definite period of time; that respondent was to act as its agent and station manager for only so long as the arrangement was satisfactory. Respondent contends that his contract was renewed as of July 1, 1937, and was to run for one year but that after he had helped to secure the highway contract the appellant ousted him as manager of the station and bulk plant agent and thereby deprived him of the right to sell gas and oil to the said highway department and thus deprived him of his commissions on the sales. He further alleges that at the time the contract with the state highway department was talked of, the appellant oil company, knowing that respondent had contacts with the highway commission which would be helpful in securing the contract to sell said highway department gas and oil, asked respondent to go to Pierre, South Dakota, to use his best efforts to secure the contract and promised that, should he secure the contract with the highway department, his contract with the appellant company would be renewed for a period of one year and that any merchandise sold to the highway department would be sold from the Isabel bulk plant in order that respondent might benefit by the commissions from such sales. Respondent contends that thereafter, on the 5th of August, 1937, the appellant oil company, in order to deprive him of such benefits from the contract, terminated respondent's employment and prohibited

him from continuing to sell merchandise either through the bulk station under his agency contract or at the service station; that certain persons connected with the appellant oil company came to Isabel from Lemmon, locked up his service station and the bulk plant, took certain books kept in the station for recording credit and cash sales and $147 in cash which was in the cash drawer. Immediately thereafter the respondent began action against the appellant.

One vital question stands out prominently which must be considered first and which will undoubtedly be decisive in our disposition of this case. That question is the changing of the terms of the promissory note in question by parol evidence. Appellant has called our attention to the pleadings. We therefore examine the complaint first. Enumerated in respondent's fourth cause of action we find a statement in the last portion of paragraph II, to the effect that "the respondent is indebted to the appellant in the sum of Two Thousand Eleven Dollars". Turning to appellant's answer in answer to respondent's fourth cause of action and under the heading "for the further and separate defense and as a counter claim * * *", we find paragraph III, under the above heading which reads as follows: "That under the said agreement and arrangement the Defendant delivered to the Plaintiff large quantities of its products; that between the inception of the deal and the 30th day of November, 1936, the Plaintiff disposed of the said products and failed and neglected to remit therefor to the Defendant, and that on said date, on account of the monies and property of the Defendant which the Plaintiff had theretofore converted to his own use, without the approval or consent of the Defendant, a settlement was agreed to between the Defendant and the Plaintiff by which the amount of such shortages of the Plaintiff was agreed upon as the sum of $2,066.66 and that in settlement of such shortages the Plaintiff thereupon made, executed and delivered to the Defendant, his promissory note, dated November 30, 1936, due six months after date, with interest at eight percent. And then it was agreed that any and all commissions earned by the Plaintiff under his agency contract, were to be kept and retained by the

Defendant and applied as payment on the said note, except the sum of two cents a gallon from the sales at the service station."

Respondent thereafter served a reply denying everything contained in appellant's counterclaim. The pleadings on account of what might seem inconsistent leave us in doubt as to how to dispose of matters which must presently be disposed of. It is difficult to determine just why respondent saw fit to allege in his complaint that he was indebted to the appellant; further, that when appellant pleaded the legal existence of the promissory note, the respondent by his reply denied its existence, which undoubtedly is the legal import of his reply to the counterclaim.

Through various assignments of error appellant challenges certain rulings of the court relating to this promissory note which was offered in evidence and considered by the jury. The appellant throughout the trial challenged respondent's right to have this note considered in the light of an issue in the law suit as it had been admitted by the pleadings of the respondent. At the close of the evidence the appellant requested the court to give requested instruction No. 6 to the effect that the respondent in his complaint had formally admitted that he was indebted to the appellant on this promissory note and that there was no controversy between the parties as to this note nor as to the adequacy of the consideration. The court refused to give such an instruction. The appellant followed up the refusal to give this instruction by an objection which seems pertinent and as it sheds some light on appellant's contention we quote: "The Defendant excepts to the refusal of the court to give Defendant's requested instruction 6 for the reason that same is a correct statement of the law and that plaintiff is estopped and cannot be permitted or heard to plead the invalidity of the note nor to vary or change its terms by parol evidence or to claim that the note could be paid by the discovery of mistakes in calculating the amount due thereon, there being no written evidence of any agreement to the effect, and all oral evidence given in support thereof is wholly incompetent; for the further reason that plaintiff is estopped

by his formal pleadings from questioning the sufficiency of the consideration of the legality of the note."

It would seem that during the course of the trial of the action there was some attempt by respondent to set up fraud and other defenses to the execution of the note. This proposed amendment as we understand from the record was withdrawn and the pleadings therefore were permitted to stand in their original form.

The court of its own motion gave the following instruction: "Plaintiff admits his liability on the note of $2066.66 less such shortages as he might prove to have been erroneously charged against him and included in said note."

The appellant's exception is as follows: "That defendant further asks to be allowed an exception to the last paragraph of said instruction III upon the ground that the pleadings of the plaintiff expressly admit the indebtedness on the promissory note herein mentioned and that there is no claim in the pleadings of the plaintiff nor in the proofs offered by him that any shortages as he might prove to have been erroneously charged against him should be subtracted from the note, and that said instruction is further excepted to for the reason that it permits the modification of the terms of the note, which is a written contract, by the introduction of oral testimony varying the amount due thereon and the time and method of payment."

Respondent offers and explains his position by showing that the appellant interposed a counterclaim asking affirmative relief and going into a large number of matters that would not be involved had the issues been confined to those originally raised in the complaint and that the case became one of accounting between the parties and that it became necessary under the counterclaim to show in detail every transaction had in connection with the business carried on by the respondent for the appellant and that the amounts sold and accounted for by him, and the shortage immediately became an issue; credit accounts and whether the respondent should be responsible for credit sales had to be determined and remittances and many other matters had to

be considered. He further charges that all these matters were brought into the suit by the appellant and the consideration of such matters involved what took place when the promissory note was given.

■ We are not at all in accord with respondent's explanation covering transactions relating to the execution of the note. Under our laws a promissory note is subject to a statute which is quite specific in its terms. Sec. 908, S. D. 1919, Rev. Code (SDC 10.0806), reads: "Written Contract—How Altered. A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

Where the parties had entered into a written contract for the furnishing of a mill, subsequent conversations and parol evidence between the parties tending to show that other arrangements would be made and that obligations of a corporation to be subsequently organized in place of the original promissor were held by this court to be inadmissible in Barnard & Leas Mfg. Co. v. Galloway et al., 5 S. D. 205, 58 N. W. 565. See, also, Lewis et al. v. St. Paul M. & M. Ry. Co., 5 S. D. 148, 58 N. W. 580; Share v. Coats, 29 S. D. 603, 137 N. W. 402; Id., 32 S. D. 604, 144 N. W. 126; Black Hills Nat. Bank of Rapid City v. Kellogg et al., 4 S. D. 312, 56 N. W. 1071.

In Washabaugh v. Hall, 4 S. D. 168, 56 N. W. 82, we held: "It was not ambiguous in meaning, nor was there any claim that it was given or obtained through mistake, accident, or fraud. The legal effect was that of an agreement executed on the part of one, executory on the part of the other. The contest was between the very parties to it. To allow it to be shown on the trial that it was not intended to be, and was not in fact, what it purported to be, would violate one of the first and most elementary rules of evidence. Sections 3553, 3554, Comp. Laws; Dean v. First Nat. Bank, 6 Dak. 222, 50 N. W. 831; Thompson v. McKee, 5 Dak. 172, 37 N. W. 367; Van Brunt v. Day, 81 N. Y. 251." Strunk v. Smith et al., 8 S. D. 407, 66 N. W. 926; Mettel et al. v. Gales et al., 12 S. D. 632, 82 N. W. 181. See, also, Reed v. Coughran et al., 21 S. D. 257, 111 N. W. 559.

■ In the pleadings there is no attempt to charge the appellant with fraud, mistake, accident or duress and there is no allegation asking rescission. The evidence at the most might indicate slightly a mutual mistake but it has not been pleaded and therefore under the authorities the court ought not to have admitted such evidence.

■ In the recent case, Stoefen v. Brooks, 66 S. D. 587, 287 N. W. 330, 332, opinion filed August 17, 1939, this court quoted from Reed v. Coughran, supra, with approval and further discussing the rule on parol testimony said: "There can be no question about the correctness of the legal principle stated in the brief of the defendants that parol testimony is inadmissible to vary, contradict or add to a contract which has been reduced to writing which is clear, definite and complete, and that in the absence of fraud, mistake or accident, it will be presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract. SDC 10.0604; Farmers' Elevator Company of Colton v. Swier et al., 50 S. D. 436, 210 N. W. 671; Clark Implement Co. v. Priebe, 52 S. D. 606, 219 N. W. 475. Plaintiffs insist, however, that the oral evidence was admissible to establish an agreement collateral to the written contract, and have cited cases where an agent selling his principal's goods personally warranted the same to induce the purchaser to sign a written order to the manufacturer. In such case there are separate and distinct agreements. This principle can have no bearing in the instant case. This was not the basis of the cause of action and was not the theory upon which the case was submitted to the jury."

Reverting to respondent's complaint, for the language used in making the bald statement "that plaintiff is indebted to the defendant on a promissory note in the sum of $2,011", then re-examining defendant's counterclaim covering this same promissory note and then finally finding the statements replying to the defendant's counterclaim in which the respondent denied everything therein contained, we might ask ourselves, "What is it all about?" It is rather peculiar that one would plead the making and execution and delivery of a note in the complaint, then later by way of reply

to a counterclaim deny the same note sued upon by appellant. We wonder if the oft used phrase might not be applicable to the situation created by the respondent's pleadings: "One cannot blow hot and cold in the same breath".

In Kimball State Bank v. Harker et al., 35 S. D. 276, 152 N. W. 100, this court held that where an answer admitted the execution of a note, the note in suit was properly admitted in evidence without proof of its execution and that an answer in the form of a general denial would not be sufficient to permit the defendant to prove that part or all of the note had been paid.

In analogy we may well contend that it being the general rule in the code states that payments must be separately pleaded, the rule of reason may easily extend to include the fact that one may not introduce evidence under a general denial to prove that certain facts would perhaps tend to show the nonexistence of part of the shortage for which the note was given. In according the respondent the position of one who has pleaded a general denial we may have gone too far, for in this case he pleads in his complaint that he is indebted to the appellant on the promissory note in a definite sum, so perhaps it may be said that we have accorded him a too favorable position in attempting to apply the law as covered by the case of Kimball State Bank v. Harker, supra, to the facts before us.

For the errors committed in the various rulings relating to the admission of the promissory note and the instructions given and the refusal to give instructions in line with appellant's requested instructions there must be a reversal. Other errors complained of in appellant's assignments of error may not occur in a re-trial, if a re-trial is had. We will therefore refrain from taking up further assignments and encumbering our reports with a consideration of the other assignments of error.

The order and judgment appealed from are reversed.

POLLEY, J., concurs.

ROBERTS, RUDOLPH and SMITH, JJ., concur in result.