KINDLEY, Respondent v. WILLIAMS, Appellant

(76 N.W.2d 227)

(File No. 9518.  Opinion filed April 13, 1956)

Rehearing denied June 8, 1956

**Robert W. Gunderson,** Rapid City, for Defendant and Appellant.

**Whiting, Lynn & Freiberg,** Rapid City, for Plaintiff and Respondent.

RUDOLPH, J. Plaintiff brought this action to recover damages for the conversion of an airplane. The jury returned a verdict for plaintiff and defendant has appealed.

Viewed in the light of the verdict of the jury the evidence discloses that on February 25, 1954, plaintiff and defendant entered into the following agreement:

"Agreement

"This agreement made February 25th, 1954, between Dr. F. R. Williams of Rapid City, South Dakota, and Wendell E. Kindley of Sioux Falls, South Dakota, witnesseth:

"Whereas, Williams has delivered to Kindley the following described airplane: One (1) new Beechcraft Bonanza serial number D-3699, license number N-3473-B, and with respect to which it is therefore agreed.

"1. Williams hereby leases the airplane to Kindley for a term of eighteen (18) months.

"2. Kindley shall pay to Williams as rental for the use of the airplane $927.85 per month payable on the tenth day of each month, the first payment to be made March 10, 1954, and a like amount thereafter on the tenth day of each month following. If such rental be not paid within ten days Williams shall have the right to recover immediately the possession of the airplane, terminate this lease and retain all rentals theretofore paid.

"3. Kindley shall use the airplane in conformance with all requirements of state and Federal statutes and regulations and the airplane shall be based at Rapid City, So Dak.

"4. Kindley shall keep the airplane in good condition and shall make all repairs necessary for its good operation at his own expense.

"5. Williams shall insure the airplane against loss in such manner as he deems proper but Kindley at the end of this lease shall return the property in as good a condition as when received reasonable wear and tear excepted and Kindley shall save Williams harmless from any claim by reason of the operation of the plane.

"6. Kindley shall not pledge, loan, mortgage, sublet or part with the possession of the airplane or permit any liens to be incurred upon the airplane during the period of this lease.

"7. Upon default in the payment of the rental or upon the breach of any conditions of this agreement to be performed and observed by Kindley, Williams shall have the right without notice or demand to terminate this lease but such termination shall not release Kindley from the payment of damages sustained by Williams. Williams shall have the right to take possession of the airplane and remove it without legal process wherever found.

"In Witness Whereof the parties have executed this agreement this 25 day of February, 1954.

"Wendall E. Kindley
"F. R. Williams M D"

However, at the time this lease agreement was entered into a separate agreement concerning this airplane was made by the parties. This agreement was substantially that the plaintiff pay to the defendant the sum of $8,500 and that this sum, together with the $927.85 monthly payments provided for in the lease for a period of 18 months, would be a complete payment for the airplane and vest the title thereto in the plaintiff. Plaintiff made the $8,500 payment and the first payment under the lease agreement but defaulted in the second payment. After this default defendant, without notice to the plaintiff, retook possession of the airplane. Within ten days after defendant retook possession of the plane the plaintiff made a tender of the amount due under the contract under the provisions of SDC 54.0218 but defendant refused to redeliver possession of the plane to plaintiff. Plaintiff then started this action to recover damages for the alleged conversion.

Respondent contends that the combined effect of the written agreement and the contemporaneous oral agreement constitutes a conditional sale within the meaning of our law. It is contended that the fact the written instrument refers to the payments as "rental" is not conclusive, Pringle v. Canfield, 19 S.D. 506, 104 N.W. 223; that the determining factor is the intention of the parties as evidenced by the entire agreement. Universal Finance Corp. v. Hamner,

61 S.D. 540, 250 N.W. 33; Western Material Co. v. Deltener, 64 S.D. 62, 264 N.W. 207. Our present law defining a conditional sale found in SDC 54.0201 is cited, which in part provides:

> "(2) Any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or have the option of becoming the owner of such goods upon full compliance with the terms of the contract."

No doubt there is merit to these contentions if effect is given to both the written and oral agreements.

■ The difficult question is whether the written agreement may be supplemented by the contemporaneous oral agreement without varying the terms of the writing. The rule in this state is based upon SDC 10.0604 and is well stated in Farmers' Elevator Co. of Colton v. Swier, 50 S.D. 436, 210 N.W. 671, 673. "* * * where a contract which has been reduced to writing and executed by the parties is complete, clear, and unambiguous in its terms and contains mutual contractual covenants, or where the consideration consists of a specific and direct promise to do or not to do certain things, this part of the contract, in the absence of fraud, mistake, or accident, cannot be changed or modified by parol or extrinsic evidence, nor can new terms be added to the contract, nor to the contractual consideration therein expressed, nor, where all these facts exist, may a party to a contract show that he was induced to sign the contract by the making of a prior or contemporaneous oral agreement, where such showing would be tantamount to adding to or subtracting from the contractual consideration expressed in the written contract."

■ We must keep in mind that the evidence discloses the negotiations between plaintiff and defendant related to a single subject, the airplane. These negotiations culminated in the written agreement set out above. The written agreement here involved is without question complete, clear and unambiguous. It is a lease and nothing else. The property is leased by the defendant to the plaintiff upon a

monthly rental basis, and the agreement specifically provides that at the expiration of the lease plaintiff shall return to the defendant "the property in as good a condition as when received reasonable wear and tear excepted." These provisions of the written agreement are in opposition to any thought that the airplane was being sold to defendant or that plaintiff was "bound to become, or have the option of becoming the owner of such goods upon full compliance with the terms of the contract."

However, respondent contends that one of the exceptions to the parol evidence rule is that where the whole agreement is not integrated into the writing that part which is in parol may be shown. Respondent cites Wigmore on Evidence, Third Edition, Vol. 9, Page 97, and quotes:

"The most usual controversy arises in cases of partial integration, i. e. where a certain part of a transaction has been embodied in a single writing, but another part has been left in some other form. Here obviously the rule against disputing the terms of the document will be applicable to so much of the transaction as is so embodied, but not to the remainder. * * *

"(1) Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties * * *

"(3) In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstances whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by most careful judges, and is in contrast with the looser and incorrect inquiry whether the alleged extrinsic negotiation contradicts the terms of the writing:"

It seems to us that this pronouncement in Wigmore defeats respondent's contention that effect may be given to the oral stipulations. The basis of respondent's claim is that the oral

stipulations provide title to the airplane is to vest in him upon the completion of the rental payments. As stated above this claim is specifically refuted by the writing wherein it provides that at the expiration of the lease plaintiff shall return to the defendant "the property in as good a condition as when received reasonable wear and tear excepted." It appears, therefore, that the element of the negotiations upon which respondent relies, that is, the element of title to the airplane upon the completion of the rental payments was specifically dealt with in the writing. This element being "mentioned, covered or dealt with in the writing, then presumably the writing was meant to represent all the transaction on that element."

The writing having provided for the disposition of the airplane upon the completion of the rental payments it would seem also that we are bound to exclude the oral negotiations relating to this subject under the express provisions of SDC 10.0604 which states that the writing "supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Moncur v. Jones, 72 S.D. 202, 31 N.W.2d 759; Thompson v. Dakota Independent Oil Co., 67 S.D. 27, 288 N.W. 148; Janssen v. Tusha, 66 S.D. 604, 287 N.W. 501.

■ We have considered the case upon the basis which it was submitted and argued. The case was submitted neither in this court nor in the trial court upon any theory of an equitable estoppel. Whether such a theory would determine the result in this case, cannot, of course, be decided unless the case is tried and submitted upon that basis with all the facts pertaining thereto established.

■ There was a pre-trial proceeding upon which appellant predicates error. Appellant had filed a counterclaim to the claim of respondent, and respondent's counsel was seeking to obtain certain admissions from appellant's counsel relative to certain items and documents involved in this claim of appellant. It is clear, we believe, from the following proceedings that there was confusion in the minds of counsel and the court regarding any admissions made or the effect of any such admissions. We quote:

"Mr. Gunderson. Now, I got to ask a question before I agree to that.

"The Court. All right.

"Mr. Gunderson. I have admitted the genuineness of some of these documents by stipulation. For instance, as to Exhibit D I have stipulated that is a copy of a letter that was written by Kindley to Dr. Williams. I am not, however, ready to stipulate it into evidence with no foundation being laid by counsel for the plaintiff on that particular matter; that I claim it is properly not admissible in evidence and cannot properly lay a foundation for D and C, and for the further reason that those are not going to be material to any of the issues in the case.

"Mr. Whiting. This is my understanding of a pre-trial conference: that in the offering of an exhibit as part of the pre-trial conference they will be admitted into evidence in the case but will still have to be introduced at the time of trial and at that time will be subject to objections such as Mr. Gunderson has referred to.

"Mr. Gunderson. That being your view of the matter then I have no objection to them being received as part of the pre-trial, it being agreed that I reserve the right to object.

"Mr. Whiting. It is so agreed."

Immediately following this colloquy counsel for respondent made a motion to dismiss the counterclaim. This motion was granted by the trial court. The counterclaim being dismissed the agreement that Mr. Gunderson would have the right to make objections at the time of trial was of no avail to him. Thereafter appellant's counsel sought certain admissions from respondent's counsel relative to certain items pertaining to the counterclaim. These admissions were refused on the basis that the counterclaim was dismissed. It was then suggested that these items be made as an "offer of proof". There was no ruling of the court following this offer, and certainly the items were never agreed to as facts by respondent. No order reciting the action taken at the conference was entered by the trial court, as contemplated by SDC 33.1003.

Upon this record we are asked to rule whether the counterclaim was properly dismissed. This we cannot do.

We are as confused regarding the admissions, the purpose and effect thereof, as the participants in the pre-trial proceeding. In view of the fact that the case must be reversed, which requires a new trial, we are of the opinion that the pre-trial proceedings should also be held for naught. If a new pre-trial is had the admissions of the parties, and the purpose and effect thereof should be made clear.

We believe that if a claim of a party is to be dismissed as a result of pre-trial the orderly procedure is by motion, which if the facts justify, may be based upon the pre-trial record. In any event the court should enter an order which recites the action taken at the conference as required by SDC 33.1003.

The judgment appealed from is reversed.

All the Judges concur.