FARMERS MUTUAL HAIL INSUR-
ANCE COMPANY OF IOWA,
Appellant,

v.

FOX TURKEY FARMS, INC., Appellee.

FOX TURKEY FARMS, INC., Appellant,

v.

FARMERS MUTUAL HAIL INSUR-
ANCE COMPANY OF IOWA,
Appellee.

Nos. 16702, 16703.

United States Court of Appeals
Eighth Circuit.

April 27, 1962.

Rehearing Denied May 23, 1962.

Ellsworth E. Evans, of Davenport,
Evans, Hurwitz & Smith, Sioux Falls,
S. D., made argument for Farmers Mut.
Hail Ins. Co.; Deming Smith and Robert
C. Heege, of Davenport, Evans, Hurwitz
& Smith, Sioux Falls, S. D., were with
him on the brief.

Ross H. Oviatt, Watertown, S. D., and
James L. Fox, Chicago, Ill., made argu-
ment and filed brief for Fox Turkey
Farms, Inc.

Before JOHNSEN, Chief Judge, and
WOODROUGH and MATTHES, Circuit
Judges.

PER CURIAM.

In this diversity case, which was tried
on the theory that South Dakota law con-
trols, we have two appeals presented. In
No. 16,702, Farmers Mutual Hail Insur-
ance Company of Iowa has appealed from
the judgment following verdict in favor
of Fox Turkey Farms, Inc., on an alleged
oral contract of insurance. Fox Farms
filed a cross-appeal which presents the
single question of whether it is entitled
to interest on the amount of the judgment
from the date of the loss of its property.

We conclude that a submissible case
was not made by Fox Farms and that the
court should have sustained motion of
Farmers Mutual Hail Insurance Company
for a directed verdict.[1] In view of this
ruling consideration of appeal No. 16,703

[1] The trial judge obviously was concerned
as to whether a case was made as he
stated during arguments on motion for di-
rected verdict: "I don't mind telling you
the Court has been troubled throughout
the trial of the case; there are some very
close questions, exceedingly close."

is obviated. For the sake of brevity we will hereinafter refer to the parties as they were designated in the trial court.

At all times mentioned herein plaintiff was in the business of raising turkeys in large quantities. Defendant was in the business of insuring turkeys against death and destruction from various causes. Pursuant to oral negotiations in March or April, 1959, between Joseph Fox, Jr., president of plaintiff, and Clarence Grue, an agent of defendant, five policies of insurance were issued by the latter on April 21, 24, 28, May 1 and May 8, 1959. Each of the first four policies covered and insured 5,000 turkeys and the last or May 8 policy, insured 6,000 turkeys, or a total of 26,000.[2] Each policy was issued as a different lot of turkeys was placed on the premises of insured, thus accounting for the issuance of five policies; however, all policies expired and terminated on October 31, 1959, and none of them was renewed by written endorsement attached thereto. After the expiration date of the policies and on November 4 and 5, 1959, 8,686 turkeys of insured were killed or died as the result of the snowstorm and blizzard which struck the area where the turkeys were being kept and cared for. Although the coverage afforded by the policies had not been extended beyond October 31, 1959, plaintiff nevertheless made claim for the amount of its loss occurring on November 4 and 5 and eventually instituted this action to recover. The pleaded theory of plaintiff relied upon for recovery is:

"That on or about March 31, 1959, plaintiff applied to the said Clarence Grue, * * * for the insurance of certain turkeys which were the property of plaintiff, * * * against death as a direct result of or destruction made necessary by * * * blizzard, snow, * * *. That the Company, by its said agent, in consideration of the premium to be paid

to it by plaintiff, then and there agreed to insure the said stock of turkeys * * * and to execute and deliver to the plaintiff policies of insurance, insuring said stock of turkeys against loss or damage, for a period from the date of said policies until the turkeys were taken off for dressing. That notwithstanding that the Company, * * * agreed as aforesaid, that said policies would insure said * * * turkeys against loss or damage for a period from the date thereof until turkeys were taken off for dressing, the insurance policies so delivered to plaintiff purported to provide that the term of said insurance would expire on October 31, 1959; that by reason of the fact that the stock of turkeys consisted mostly of sexed toms, and that such toms would be held longer than the usual growth period to heavy weights, and furthermore, due to the fact that they were hatched at diverse dates, as indicated by the dates of said policies, a termination of the insurance on October 31, 1959, would not provide full coverage; that the company's said agent agreed thereto, and agreed that, at or before the said expressed termination date, the company would extend the expiration date to provide the coverage agreed to as aforesaid as was and is the custom; * * *."

By answer defendant denied liability, alleging, inter alia, that its agent Grue was without authority to waive or change any part of the written contracts except by written endorsement issued by defendant and attached to the policies.

Over objection the court permitted Mr. Fox to testify at some length as to the negotiations which were antecedent to the issuance of the policies. The gist of this testimony which plaintiff relies upon as being sufficient to establish an oral

2. The policies insured the turkeys "against death as a direct result of or destruction made necessary by: fire and lightning * * * blizzard, * * * snow, sleet, * * *.

"This policy also covers huddling, piling, smothering, drowning or freezing only: as the immediate and direct result of a peril insured against coming in contact with the turkeys; * * *."

contract of insurance, is summed up in this statement of the witness: "I told Mr. Grue that October 31st did not seem to be long enough and I, at that time, went over and reached for a calendar and proceeded to add 28 weeks from the time that I knew the approximate time the last birds would be on there, which would be the first week in May, and found these birds would not be ready for maturity until sometime in the end of November and one flock in the first part of December. * * * I then told Mr. Grue that I am not acquainted with the usual procedure on writing turkey insurance policies whereby you have an automatic October 31st date, but that Fox Turkey Farms is interested and wants the turkeys fully insured until the time that they leave the farm and are taken to the processing plant. Mr. Grue then stated 'I will take care of this.'"

By the court's instructions, the jury was informed that the issues were (1) did plaintiff and defendant in the spring of 1959 enter into an oral contract for insurance under which the defendant undertook and agreed to insure the plaintiff against turkey losses from the date of the issuance of the policies until the turkeys were taken off for dressing; (2) did they intend the conversation early in the spring of 1959 only as a preliminary, as contended by defendant, to the five insurance policies which thereafter were issued? A verdict was authorized for plaintiff if the jury found (1) that plaintiff and defendant in the spring of 1959 entered into the alleged oral contract for insurance until the turkeys were off the farm and dressed; (2) that the five policies were intended as partial performance only of the alleged oral contract; and (3) if plaintiff had sustained a loss from the storm on November 4 and 5, 1959.

Basically, and stripped of non-essentials, the question for determination is a narrow one, and simply stated is: Were the antecedent negotiations and conversation of the parties (Fox and Grue) merged into the written agreement (insurance policies)? If so, then clearly there was no factual issue for the jury to resolve for indisputably the policies were lifeless and without effect when the loss occurred.

 Resolution of the question brings into play the parol evidence rule, which has been the subject of much discussion by eminent text writers and by the courts. Contrary to the meaning reasonably deducible from its name, the parol evidence rule is not a rule of evidence but a rule of substantive law. Eggers v. Eggers (S.D.), 110 N.W.2d 339, 341; Dunlop Tire and Rubber Corp. v. Thompson, 8 Cir., 273 F.2d 396, 399; Williston on Contracts, 3d Ed., Vol. 4, § 631, p. 955; Corbin on Contracts, 1961 Ed., Vol. 3, § 573, p. 357. The very core of this rule is that all antecedent negotiations and conversations are deemed to have been merged into the written agreement of the parties, and it is presumed that the whole agreement was reduced to and embodied in the writing. The general rule is embodied in South Dakota Code 1939, § 10.0604, in this language: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument," and the Supreme Court of South Dakota has given effect to the rule as codified, in Moncur v. Jones, 72 S.D. 202, 31 N.W. 2d 759, 764, and Kindley v. Williams, 76 S.D. 225, 76 N.W.2d 227, 229, 57 A.L.R. 2d 1070.

The parol evidence rule requires, "in the absence of fraud, duress, mutual mistake, or something of the kind, the exclusion of extrinsic evidence, oral or written, where the parties have reduced their agreement to an integrated writing. This does not preclude parol evidence from being introduced to prove the making of a contemporaneous contract *which does not cover the same ground as the integrated writing * * *.*" (Italics supplied). Williston on Contracts, op. cit. pp. 949, 950. Appleman in his treatise on Insurance Law and Practice, Vol. 12, § 7205, p. 302, states, "Generally, oral

negotiations or preliminary dealings are merged into \* \* \* the policy itself when issued which supersedes all negotiations and expresses the final intention of the parties \* \* \*." In Dunlop Tire and Rubber Corp. v. Thompson, supra, 273 F.2d 396, at p. 399, we stated: "In the absence of fraud or mistake, where a written contract is plain, unambiguous and complete in its terms, parol evidence may not be used to contradict, vary or add to any of its provisions. (Citing authorities)." In Stoefen v. Brooks, 66 S.D. 587, 287 N.W. 330, at p. 332, the Supreme Court of South Dakota declared that " \* \* \* parol testimony is inadmissible to vary, contradict or add to a contract which has been reduced to writing which is clear, definite and complete, and \* \* in the absence of fraud, mistake or accident, it will be presumed that the written agreement expresses the final intention of the parties upon the subject matter of the contract." See also Moncur v. Jones, supra, 72 S.D. 202, 31 N.W.2d 759; Vaughn v. Rosencrance, 73 S.D. 36, 38 N.W.2d 822; Kindley v. Williams, supra, 76 S.D. 225, 76 N.W.2d 227.

Plaintiff recognizes and adheres to the foregoing principles. It concedes that all terms and conditions of the policies, including the expiration date, were valid and in accordance with the prior understanding of the parties—but it claims that "in effect two parol agreements were entered into in the spring of 1959, one of which was performed by the issuance of the policies and one of which was executory as to the extensions." The fatal weakness of this ingenious theory becomes obvious when all the facts and circumstances are considered and viewed in light of the controlling law.

■ The evidence conclusively establishes that only *one* agreement emerged from the conversation between plaintiff's president Fox and agent Grue which took place in March or April, 1959. As we have seen, the negotiations then carried on were centered around and focused upon *one* subject—insurance covering plaintiff's turkeys from the time they were placed on the farm until they were removed therefrom. Pursuant to such negotiations valid written contracts, free from fraud, duress, mistake, ambiguity or other legal infirmity were entered into. These contracts or policies insured the turkeys for a term ending October 31, 1959. Among other provisions contained therein § 14 thereof provided: " \* \* \* nor shall the terms of this policy be waived or changed, *except by endorsement issued to form a part of this policy*." (Italics supplied). Thus by the plain terms of the policies, conceded by plaintiff to be valid in every detail, the only method by which the policies could be extended beyond October 31 was by endorsement attached thereto. This is precisely the course that was pursued during the previous year when defendant had issued a larger number of policies insuring approximately 75,000 turkeys, the property of plaintiff. Upon the expiration date of October 31, 1958, one of the policies was extended by *written endorsement attached thereto*. Moreover, from Fox's testimony, it is clearly demonstrated that he fully understood that if insurance was required beyond October 31, 1959, it was to be provided in accordance with the policy terms, i. e., by written endorsement. Concerning the negotiations prior to the issuance of the policies, Fox's testimony was: "I asked Mr. Grue to be sure and check at the farm at the time of expiration of these [policies] *before he wrote the extensions* to find out exactly how many turkeys would be left on the farm at that time, and *write the extensions for those left*." (Italics supplied). Likewise, on the day that Fox learned of the loss, he contacted Grue by telephone and asked him "if he had been out to the farm and knew about our losses out there and he said he knew about the storm. \* \* \* I asked him at that time whether or not he had *sent out the notices on the extension for the insurance* and he stated that he did not know." (Italics supplied).

In summary, we hold that all of the prior negotiations relied upon in part by plaintiff as constituting a separate and enforceable oral contract, were by law merged into the policies. Since by the

plain terms thereof any extension beyond the expressed termination date had to be in writing and attached to the policies, plaintiff is prohibited from recovering on the theory of an antecedent oral contract of insurance. Whether in fact there was such a contract is legally irrelevant in light of the parol evidence rule.

The judgment is

Reversed.